**Stephen James UTTS, M.D., Petitioner,**

v.

**Dennie SHORT, individually and as executor of The Estate of Clifton Short, deceased, Norma L. Short, Patricia Ann Cain, and Sam Short, Respondents.**

No. 99–0366.

Supreme Court of Texas.

Argued Sept. 19, 2001.

Decided July 3, 2002.

Diana L. Faust, R. Brent Cooper, Cooper & Scully, Dallas, Glen Wilkerson, David M. Davis, Davis & Wilkerson, Austin, for Petitioner.

Michael W. Shore, Shore & Fineburg, Dallas, Steven E. Aldous, Donna J. Bowen, Slack & Davis, Austin, for Respondent.

Justice BAKER delivered the opinion of the Court in Parts I–IV, in which Chief Justice PHILLIPS, Justice ENOCH, Justice HANKINSON, Justice O'NEILL, and Justice JEFFERSON join, and delivered a concurring opinion in Part V, in which Justice ENOCH, Justice HANKINSON, and Justice O'NEILL join.

We grant Dr. Utts's motion for rehearing. We withdraw our opinion of Febru-

ary 28, 2002, and substitute the following in its place.

## I. INTRODUCTION

In this wrongful-death case, we must determine whether a nonsettling defendant is entitled to settlement credits under Chapter 33 of the Texas Civil Practice and Remedies Code. We hold that the record here triggers the presumption that the nonsettling defendant is entitled to settlement credits against the amounts the jury awarded the nonsettling plaintiffs because the nonsettling plaintiffs benefited from the settling plaintiff's settlement proceeds. We further hold that the trial court must give the nonsettling plaintiffs an opportunity to demonstrate that they did not benefit from another party's settlement. Consequently, we reverse the court of appeals' judgment and remand this case to the trial court for proceedings consistent with this opinion.

## II. BACKGROUND

Clifton Short died from blood loss and infection related to a perforated colon that occurred during polypectomy surgery. Dr. Stephen James Utts performed the initial surgery, and Dr. Jean–Pierre Forage performed the subsequent surgery to repair the colon. Dennie Short, individually and as executor of Clifton Short's estate, Norma Short, Patricia Ann Cain, and Sam Short, respondents in this case, and Dorothy Short Walker sued Utts, Forage, and HCA South Austin Medical Center for Clifton Short's alleged wrongful death.

Early in the litigation, all plaintiffs non-suited with prejudice their claims against Dr. Forage, leaving Dr. Utts and HCA as defendants. Later, Dorothy Walker agreed to settle with HCA for $200,000. The settlement agreement between Walker and HCA states that HCA agreed to pay $50,000 to Dorothy Walker Short and

$150,000 to Shore & Fineberg, L.L.P. The HCA settlement check in the record shows that HCA paid the entire $200,000 directly to Shore & Fineburg's trust account.

On the same day Walker signed the settlement agreement, she signed another document requesting that the Short family's counsel distribute—from "any monies belonging to me that he or his firm may have in his possession"—$10,000 to each Short family member remaining in the suit in his or her individual capacity. Soon thereafter, the individual Short family members and the Estate settled with HCA for $10 each. Then, Walker and the Short family nonsuited with prejudice their claims against HCA. About two months later, Walker nonsuited with prejudice her claim against Dr. Utts. Thus, Walker no longer participated in the suit, and only Dr. Utts and the other Short family members remained parties.

Before trial, Dr. Utts filed his written election for a $200,040 dollar-for-dollar settlement credit under Chapter 33 of the Texas Civil Practice and Remedies Code. (At the motion-for-judgment hearing, Dr. Utts's counsel noted that the written election inadvertently omitted the $10 reflecting the estate's settlement with HCA.) The Short family members and the Estate objected to Dr. Utts's election. They argued they were the only "claimants" currently involved in the case and that HCA's settlement with them was only $10 each. Therefore, they argued that Dr. Utts was entitled to a $10 per plaintiff credit. Dr. Utts did not respond to this argument.

The parties tried the case to a jury. The jury found that Dr. Utts's and HCA's negligence proximately caused the Short family's damages. The jury found Dr. Utts twenty-five percent negligent and HCA seventy-five percent negligent. The jury awarded the Estate $100,000, Norma Short $300,000, and the three children

Dennie, Patricia, and Sam, $12,000 each. The Short family and the Estate moved for judgment on the verdict, allowing only a $10 per plaintiff settlement credit. Dr. Utts responded to the motion for judgment, objected to the $50 credit limitation, and requested a credit for the entire $200,000 HCA paid to Walker. In his response, Dr. Utts asserted that he was entitled to the entire $200,000 credit because the Short family benefited from Walker's settlement, and Walker's nonsuiting him was merely an attempt to circumvent how the statutory settlement credit should apply.

The Short family, in response, argued that Walker was not a "claimant" as Chapter 33 defines that term; therefore, Dr. Utts was not entitled to a credit for Walker's $200,000 settlement. They also argued that the factual claims and references to documents in Dr. Utts's response to their motion for judgment were never offered into evidence during trial, were not part of the record, and were inadmissible hearsay.

Dr. Utts replied that Walker was a "claimant" under Chapter 33. He also filed a motion to reopen the evidence in the event the plaintiffs argued that the evidence about the settlement details that Dr. Utts intended to rely on during the motion-for-judgment hearing was untimely. Finally, Dr. Utts requested that the trial court take judicial notice of various pleadings and motions filed in the case.

During the hearing on the motion for judgment, the trial court took judicial notice of several documents in the trial court's file, including the pleadings and Dr. Utts's election for a settlement credit. Then, Dr. Utts attempted to offer several documents into evidence, but the Short family members objected. These documents included (1) correspondence between plaintiffs' counsel and HCA's counsel about how Walker's and the Short family members' settlement proceeds would be distributed; (2) a copy of the HCA $200,000 check made payable to a trust account of the plaintiffs' counsel; and (3) correspondence from Walker instructing the plaintiffs' counsel to give each Short family member $10,000 from the monies belonging to Walker in the firm's trust account. The trial court allowed Dr. Utts to offer the documents and discuss their contents on the record, and it heard the Short family's objections. Additionally, during the motion for judgment hearing, the Short family's counsel stated that "[Walker] got $200,000, and then she also executed the document giving me permission to put $150,000 into my trust account for fees and expenses which she was jointly and severally liable for." The trial court advised the parties that it would take all the matters at the hearing, including whether Dr. Utts's evidence was admissible, under advisement.

Following the hearing, the trial court notified the parties in a letter that it could not consider Dr. Utts's post-verdict evidence and that Dr. Utts waived his right to a $200,000 credit because he did not introduce the evidence about the settlement before submission to the jury. The trial court's letter also stated that Walker was not a "claimant" under Chapter 33, because the statute's definition of that term requires that the claimant be a party seeking recovery when the trial and verdict occurred. The trial court sent with the letter its final judgment, which reflected the amounts the jury awarded, less a $10 credit ($50 total) for the Estate's and each family member's settlement with HCA.

Dr. Utts then filed several formal bills of exception, identifying the evidence the trial court heard but refused to admit during the hearing on the motion for judgment. The trial court next signed an order that

overruled Dr. Utts's objection to the Short family's motion for judgment, denied his motion to reopen the evidence, and granted his request to take judicial notice of the pleadings and motions.

Dr. Utts timely appealed and raised three issues: (1) whether he met his burden to prove a settlement by introducing evidence after a verdict was reached; (2) whether he was statutorily entitled to a settlement credit for the Walker settlement, or whether the multiple claimants could structure a settlement to avoid his right to a credit; and (3) whether a dollar-for-dollar credit for a lump-sum settlement with multiple claimants should be subtracted from the total damages the jury awards, rather than allocated based on each claimant's percentage of recovery from the total verdict. 987 S.W.2d at 629. In deciding Dr. Utts's second issue, the court of appeals concluded that although Walker was a "claimant" under Chapter 33, Dr. Utts was not automatically entitled to apply a credit for Walker's settlement against the other Short family members' recoveries. The court of appeals held that one claimant's settlement cannot be applied against a different claimant's recovery under Chapter 33. 987 S.W.2d at 630. Because it resolved Dr. Utts's second issue, the court of appeals declined to consider Dr. Utts's first and third issues. 987 S.W.2d at 633.

Dr. Utts petitions this Court for review on three grounds. First, he argues that he is entitled to a credit for Walker's settlement with HCA based on how we construed section 33.012(b) of Chapter 33 in *Drilex Sys., Inc. v. Flores*, 1 S.W.3d 112 (Tex.1999). Second, Dr. Utts argues that the term "claimant" is not limited to those derivative plaintiffs remaining in the suit at the time the trial court submits the case to the jury. Third, Dr. Utts seeks a credit for Walker's settlement because, he contends, the settlement transaction was a "sham" intended to circumvent Chapter 33's proper operation and purposes.

## III. SETTLEMENT CREDITS— WHEN THEY MAY APPLY TO NONSETTLING PLAINTIFFS

Today the Court expresses three positions about whether *Drilex's* Chapter 33 settlement-credit analysis applies here: (1) four members of the Court contend that we should overrule *Drilex* and thus it does not apply, 1 S.W.3d at 115 (Baker, J. concurring); (2) two members argue that *Drilex* is distinguishable and does not control because Walker was not a party seeking damages when the trial court submitted the case to the jury, 81 S.W.3d at 836 (Phillips, C.J., concurring); and (3) three members argue that *Drilex's* Chapter 33 analysis is correct and applies, 81 S.W.3d at 838 (Owen, J., dissenting). Accordingly, we do not apply *Drilex* to determine which settlement amounts Dr. Utts may credit against the Short family members' recoveries.

However, a majority of the Court agrees that we must consider Dr. Utts' contention that he is entitled to full credit for Walker's settlement with HCA because the transaction's structure allowed the Short family members to avoid the statutory settlement credit. The court of appeals rejected that argument. It noted that Dr. Utts did not attempt to present evidence in the trial court to support his allegation that the settlement was a "sham" until after the jury returned its verdict. 987 S.W.2d at 631. The court of appeals opined that Dr. Utts knew how the Walker settlement was distributed well before the trial court submitted the case to the jury; therefore, Dr. Utts could have offered evidence about the Walker settlement, even in the face of a motion in limine, by presenting the evidence to the trial court out-

side the jury's presence. 987 S.W.2d at 632.

The court of appeals also observed that Dr. Utts took no countermeasures to protect himself from the potentially adverse consequences of Walker's settlement with HCA. The court of appeals noted that Dr. Utts did not attempt to keep Walker in the suit for a jury submission, he did not request the trial court to structure the jury submission in a way that would permit establishing a fraud or sham claim, and he did nothing to preserve a potential claim against HCA. 987 S.W.2d at 632.

Dr. Utts concedes that, before the case was submitted to the jury, he did not offer the evidence demonstrating the settlement's nature nor did he request a fact-finding that the settlement was a sham. Dr. Utts did request the trial court, after the verdict, to reopen the evidence to allow him to demonstrate the nature of the settlement. Although the trial court denied this request, Dr. Utts does not challenge that ruling here. Instead, he argues that it is not his burden to prove the transaction's nature. Dr. Utts asserts several reasons why placing the burden on him is improper: (1) he is a stranger to this transaction; (2) the Short family's attorney is an officer of the court and has a fiduciary responsibility to show the transaction's fairness; (3) one who claims a gift has the burden to prove that such is the fact; and (4) imposing the burden upon the nonsettling defendant to prove the settlement's nature not only unfairly penalizes the nonsettling defendant, but also allows settling parties to circumvent the one-satisfaction rule. Finally, Dr. Utts contends that even if he has the burden to prove how the settlement actually worked, the evidence in the record is enough to demonstrate the transaction's spuriousness.

## A. APPLICABLE LAW

■ A defendant seeking a settlement credit has the burden to prove its right to such a credit. *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 927 (Tex.1998). In *Ellender*, we determined that to obtain a dollar-for-dollar settlement credit, Chapter 33 requires only a written election before the case is submitted to the fact finder. 968 S.W.2d at 927 (citing TEX. CIV. PRAC. & REM.CODE § 33.014). We recognized that Chapter 33 is silent about which party must prove the settlement amount; thus, we referred to the common law. *Ellender*, 968 S.W.2d at 927. In doing so, we concluded that the common law requires only that the record show, in the settlement agreement or otherwise, the settlement credit amount. *Ellender*, 968 S.W.2d at 927 (relying on *First Title Co. v. Garrett*, 860 S.W.2d 74, 78 (Tex.1993)).

■ Once the nonsettling defendant demonstrates a right to a settlement credit, the burden shifts to the plaintiff to show that certain amounts should not be credited because of the settlement agreement's allocation. *Ellender*, 968 S.W.2d at 928. In *Ellender*, we noted that requiring a nonsettling defendant to prove the settlement agreement's allocation before receiving a settlement credit unfairly penalizes the nonsettling defendant. Moreover, we recognized that settling plaintiffs are in a better position than nonsettling defendants to ensure that the settlement awards are properly allocated. *Ellender*, 968 S.W.2d at 928; *see also In re Texas Gen. Petroleum Corp.*, 52 F.3d 1330, 1340 (5th Cir. 1995); *Hess Oil Virgin Islands Corp. v. UOP, Inc.*, 861 F.2d 1197, 1208 (10th Cir. 1988).

## B. ANALYSIS

■ Dr. Utts' allegation that the Walker–HCA settlement is a "sham" transaction is actually a claim that, to

avoid the Short family members benefiting from the Walker–HCA settlement in contravention of Chapter 33's settlement-credit scheme, he is entitled to a credit for the settlement under Chapter 33. We disagree with the court of appeals' analysis about how Dr. Utts should have raised this issue in the trial court. In *Ellender*, we were not confronted with the issue that we consider here. But *Ellender's* Chapter 33 analysis provides guidance. *See Ellender*, 968 S.W.2d at 927–28. A defendant must file an election for a dollar-for-dollar settlement credit before the case is submitted to the jury, and the record must reflect that credit amount. TEX. CIV. PRAC. & REM. CODE § 33.014; *Ellender*, 968 S.W.2d at 927. But when a case involves facts suggesting that a nonsettling plaintiff may have benefited from the proceeds of another plaintiff's settlement, the nonsettling defendant must raise this allegation to the trial court—not the jury—and present evidence of the benefit as part of its burden in electing for a dollar-for-dollar credit. The nonsettling defendant may present this evidence to the trial court outside the jury's presence and request that the trial court resolve its settlement-credit claim before the trial court submits the case to the jury. Indeed, the nonsettling defendant may consider the trial court's settlement-credit ruling critical to its election decision. Thus, the trial court should resolve the issue before it submits the case if the nonsettling defendant so requests. However, the nonsettling defendant may also urge its settlement-credit motion and introduce evidence thereon after the jury has returned its verdict, provided the nonsettling defendant properly filed a written election under Chapter 33 before the case was submitted. A nonsettling defendant's allegation that nonsettling plaintiffs benefited from another plaintiff's settlement must be resolved in this manner because the trial court, not the jury, determines

how a settlement credit applies as part of the trial court's function when it determines the judgment to render based on the jury's verdict. *See Ellender*, 968 S.W.2d at 928–29.

Accordingly, we hold that, when a nonsettling defendant contends it is entitled to a credit because a nonsettling plaintiff benefited from another plaintiff's settlement proceeds, the nonsettling defendant must file a written election before the trial court submits the case to the jury and ensure the settlement amount is in the record, just as it would in any other Chapter 33 case. *See* TEX. CIV. PRAC. & REM. CODE § 33.014; *Ellender*, 968 S.W.2d at 927. Then, through pre- or post-verdict discovery, the nonsettling defendant must present evidence to the trial court that demonstrates the nonsettling plaintiff benefited from the settlement the nonsettling defendant relies on. If the evidence shows such a benefit, then the trial court should apply the settlement credit reflecting that benefit unless the nonsettling plaintiff presents evidence that he or she did not benefit from the settlement. In other words, once the nonsettling defendant presents evidence of the nonsettling plaintiff's benefit from a settlement, the trial court shall presume the settlement credit applies unless the nonsettling plaintiff presents evidence to overcome this presumption. As we recognized in *Ellender*, a nonsettling party should not be penalized for events over which it has no control. *Ellender*, 968 S.W.2d at 927. Like the *Ellender* plaintiffs who were in the best position to demonstrate how they agreed to allocate settlement amounts for punitive and actual damages, the nonsettling plaintiffs in the circumstances here are in the best position to demonstrate why they did not benefit from the settlement. *See Ellender*, 968 S.W.2d at 928.

Here, the record indicates that Dr. Utts filed a written election for $200,040 before the trial court submitted the case to the jury. Moreover, the settlement agreements between Walker and HCA and the Short family members and HCA are in the record. *See Ellender*, 968 S.W.2d at 927. Furthermore, Dr. Utts properly raised his claim that he may be entitled to credit Walker's settlement with HCA against the Short family members' jury awards. In his response to the Short family's motion for judgment, he alleged that the Short family members who did recover from Dr. Utts benefited from the Walker settlement.

■ Moreover, during the motion for judgment hearing, and in his formal bills of exception, Dr. Utts offered the types of evidence a nonsettling defendant may rely on to establish that a nonsettling plaintiff benefited from another plaintiff's settlement. The settlement between Walker and HCA, the $200,000 check from HCA made payable to the trust account of the plaintiffs' firm, Walker's letter instructing plaintiffs' counsel to distribute a total of $40,000 from that trust account to the individual Short family members, and the settlement agreement between the Short family members and HCA for nominal amounts all demonstrate that the Short family members benefited from Walker's settlement with HCA. Further, plaintiffs' counsel made statements before the trial court and the court of appeals suggesting that $150,000 from the Walker–HCA settlement went to the plaintiffs' attorneys for fees and costs. Nothing in the record shows whether Walker actually received $50,000 as the settlement agreement states, or whether she only received $10,000. Therefore, we conclude that the record evidence and counsel's statements together raise a presumption that Dr. Utts may be entitled to a credit for $190,000 of the settlement amount. Consequently, we presume that each individual Short family member's recovery from Dr. Utts should be credited with the amount reflecting the benefit he or she received from the settlement proceeds. *See Ellender*, 968 S.W.2d at 927. The burden thus shifts to each Short family member to present evidence showing why the settlement credit should not apply. To avoid the credit, each member must demonstrate that he or she did not benefit from the Walker–HCA settlement agreement.

## IV. DISPOSITION

■ Because we announce a new proposition of law today, we remand this case to the trial court to allow each Short family member an opportunity to present evidence to show that he or she did not receive any benefit from the Walker–HCA settlement. Then, if the trial court determines that the Short family members have not overcome the presumption that Dr. Utts is entitled to apply a settlement credit to each individual's recovery, the trial court should allow Dr. Utts settlement credits consistent with this opinion. Thus, we reverse the court of appeals' judgment and remand the case to the trial court for proceedings consistent with this opinion.

## V. SETTLEMENT CREDITS— DERIVATIVE PLAINTIFFS

For different reasons, a majority of the Court concludes that *Drilex's* Chapter 33 settlement-credit analysis does not control the settlement-credit issue in this case. I write here separately to explain why I believe that, although it remains the law, *Drilex* was wrongly decided and thus does not apply.

Dr. Utts argues that he is entitled to a credit for Walker's settlement with HCA based on how we interpreted section 33.012(b) in *Drilex*. Dr. Utts urges that

all wrongful-death beneficiaries should be treated as one "claimant" under section 33.012(b) because that interpretation is consistent with our decision in *Drilex. See Drilex*, 1 S.W.3d at 124. The Short family, on the other hand, have consistently argued that Dr. Utts is not entitled to a settlement credit, despite evidence of the settlement amount, because Walker was not a "claimant" in the suit when it went to trial.

### A. Applicable Law

Chapter 33 of the Code, Texas's proportionate-responsibility statute, governs how settlement credits apply in tort suits. *See* Tex. Civ. Prac. & Rem.Code § 33.002; *Ellender*, 968 S.W.2d at 926. Chapter 33 refers to a party asserting a tort claim as a "claimant" and defines that term:

"Claimant" means a party seeking recovery of damages pursuant to the provisions of Section 33.001, including a plaintiff, counterclaimant, cross-claimant, or third party plaintiff seeking recovery of damages.

Tex. Civ. Prac. & Rem.Code § 33.011(1). Section 33.011(1) also provides:

In an action in which a party seeks recovery of damages for injury to another person, damage to the property of another person, death of another person, or other harm to another person, "claimant" includes both that other person and the party seeking recovery of damages pursuant to the provisions of Section 33.001.

Tex. Civ. Prac. & Rem.Code § 33.011(1).

Under Chapter 33, a claimant may not recover damages if his or her percentage of responsibility is greater than fifty percent. Tex. Civ. Prac. & Rem.Code § 33.001. But if a claimant's contributory negligence is less than fifty percent, the claimant's recovery is reduced only by that percentage. Tex. Civ. Prac. & Rem.Code

§ 33.012(a). Moreover, if a claimant has settled with one or more defendants, section 33.012 requires the trial court to reduce the damages the claimant recovers according to one of two methods—a dollar-for-dollar credit or a sliding scale—as the defendant elects. Tex. Civ. Prac. & Rem. Code §§ 33.012(b), 33.014. The dollar-for-dollar credit section provides:

If the claimant has settled with one or more persons, the court shall further reduce the amount of damages to be recovered by the claimant with respect to a cause of action by a credit equal to ... (1) the sum of the dollar amounts of all settlements. . . .

Tex. Civ. Prac. & Rem.Code § 33.012(b)(1).

In *Drilex*, we determined for the first time how sections 33.011(1) and 33.012(b) work together in a case involving derivative plaintiffs suing multiple defendants because of a family member's injury. *Drilex*, 1 S.W.3d at 112. Based on how we interpreted section 33.011(1), and the potential unfairness to nonsettling defendants who have no control over how plaintiffs may design settlements to avoid full settlement credits, we concluded that the entire family was one claimant for purposes of applying a settlement credit under section 33.012(b). *Drilex*, 1 S.W.3d at 122; *see also General Chem. Corp. v. De La Lastra*, 852 S.W.2d 916, 923 (Tex.1993); *J.D. Abrams, Inc. v. McIver*, 966 S.W.2d 87, 96 (Tex.App.-Houston [1st Dist.] 1998, pet. denied).

Under the one-satisfaction rule, a plaintiff is entitled to only one recovery for any damages suffered because of a particular injury. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex.2000). The one-satisfaction rule provides that, when a claimant seeks recovery for the same injuries from multiple parties, the claimant is entitled to only one recovery on those injuries. *Stew-*

*art Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 5 (Tex.1991). In requiring that each claimant's jury award is reduced by any amount for which he or she settles, section 33.012 upholds this rule.

## B. ANALYSIS

Like the court of appeals, I believe that the real issue presented here is whether section 33.012(b) permits a nonsettling defendant to apply one derivative plaintiff's settlement as a credit against a different derivative plaintiff's recovery. We answered that question yes in *Drilex.* *See Drilex,* 1 S.W.3d at 115–16. However, the facts and the arguments raised here should cause the Court to reexamine *Drilex's* Chapter 33 analysis. And, in doing so, I conclude that *Drilex* was wrongly decided.

In *Drilex,* we applied Chapter 33 to a suit in which an injured worker, Jorge Flores, and his family sought recovery for Flores' injuries. The Flores family settled with one defendant. *Drilex,* 1 S.W.3d at 115. Specifically, the Flores children settled individually with the defendant for different amounts. The parents jointly accepted a lump sum to settle their claims. And Jorge, individually, received a settlement amount. *Drilex,* 1 S.W.3d at 120–21. The jury then awarded the Flores family members damages from another defendant. *Drilex,* 1 S.W.3d at 116. The issue was whether, under section 33.012(b), the Flores family members were individual "claimants" so that the trial court should have credited each individual's jury award with the amount for which he or she settled, or whether the Flores family members were collectively one claimant so that the trial court should have credited the aggregate jury award with all the amounts paid in the settlements. *Drilex,* 1 S.W.3d at 121. We concluded that the entire fami-ly was one claimant. *Drilex,* 1 S.W.3d at 122.

In *Drilex,* we professed to follow section 33.011(1)'s plain language to conclude that "claimant" under section 33.012(b) means all family members suing for damages arising from another family member's injury or death. But, in doing so, we did not adhere to our statutory-construction rule that we must not construe statutes in a way that would lead to an absurd result. *C & H Nationwide, Inc. v. Thompson,* 903 S.W.2d 315, 322 n. 5 (Tex.1994). In. section 33.011(1), the Legislature defined "claimant" in the first sentence as "a party seeking recovery of damages pursuant to the provisions of section 33.001 [the proportionate-responsibility statute]." However, instead of applying that definition in *Drilex,* we relied on section 33.011(1)'s second sentence to define claimant. *Drilex,* 1 S.W.3d at 122. The second sentence explains that, when someone sues because he or she has suffered a loss caused by another person's injury or death, "claimant includes both that other person and the party seeking recovery of damages pursuant to the provisions of section 33.001." TEX. CIV. PRAC. & REM.CODE § 33.011(1). Based on that sentence, we concluded in *Drilex* that, for settlement-credit purposes under section 33.012(b), "the Legislature defined claimant to include both the injured party and the party or parties seeking recovery of damages for injury to that person." *Drilex,* 1 S.W.3d at 123.

However, reading Chapter 33 as a whole and under well-established Texas law, it is evident that the Legislature did not intend for section 33.011(1)'s second sentence to provide a separate definition of "claimant." Rather, the second sentence ensures that, when a suit involves derivative claims, the derivative plaintiff cannot recover if the injured or deceased person's negligence is greater than fifty percent. *See* TEX. CIV.

PRAC. & REM.CODE §§ 33.001, 33.011(1). Further, the second sentence ensures that, if the injured or deceased person's negligence does not bar the claim, the derivative plaintiff's recovery is reduced by a percentage equal to the injured or deceased person's percentage of responsibility. *See* TEX. CIV. PRAC. & REM.CODE § 33.012(a).

We have recognized causes of action for certain family members who suffer personal damages arising from another family member's injury or death. *See, e.g., Reagan v. Vaughn,* 804 S.W.2d 463, 467 (Tex. 1990); *Whittlesey v. Miller,* 572 S.W.2d 665, 668 (Tex.1978). But such derivative claims would not exist but for a family member's injury or death. Therefore, the injured or deceased person's contributory negligence, if more than fifty percent, precludes a derivative plaintiff's recovery. *See Reagan,* 804 S.W.2d at 467. On the other hand, if the injured or deceased person's contributory negligence is less than fifty percent, then the trial court must reduce the derivative claimant's jury award by the injured or deceased person's contributory negligence. TEX. CIV. PRAC. & REM.CODE § 33.012(a). Then, if the derivative plaintiff settles his or her derivative claims, which reflect his or her personal injuries, the trial court should credit those amounts to any jury award the derivative plaintiff receives against nonsettling defendants. TEX. CIV. PRAC. & REM.CODE § 33.012(b). This analysis gives all the language in sections 33.001, 33.011(1), and 33.012 meaning that comports with Texas law.

Furthermore, in *Drilex,* we not only misconstrued section 33.011(1), but we also read language *into* its second sentence. That is, we determined that under the second sentence "the Legislature defined claimant to include both the injured party and the party *or parties* seeking recovery

of damages for injures to that person." *Drilex,* 1 S.W.3d at 123 (emphasis added). Reading *parties* into section 33.011(1)'s second sentence which only refers to *person*—singular nor plural—likewise led to our erroneous conclusion that a claimant in cases involving derivative claims includes the injured or deceased and the entire family. *Drilex,* 1 S.W.3d at 123.

Additionally, in *Drilex,* we misplaced our reliance on two cases to support our conclusion that "claimant" under section 33.012(b) includes all the derivative plaintiffs as one. First, we cited *General Chemical Corp.,* 852 S.W.2d at 923. *See Drilex,* 1 S.W.3d at 122. But in *General Chemical Corp.,* we held that Texas's Constitution prohibits a parent from recovering punitive damages for wrongful death. *General Chem. Corp.,* 852 S.W.2d at 923. We noted that the court of appeals arrived at the contrary conclusion based on, among other things, the definition of claimant in section 41.001(1) of the Texas Civil Practice and Remedies Code chapter discussing exemplary damages. In doing so, we recognized that section 41.001(1)'s definition includes both the deceased person and the party seeking exemplary damages. *See General Chem. Corp.,* 852 S.W.2d at 923. However, contrary to what we said in *Drilex,* we did not, in *General Chemical Corp.,* "construe" or "conclude" anything about section 41.001(1)'s meaning. *See Drilex,* 1 S.W.3d at 122. Rather, we only acknowledged, and then rejected, the court of appeals' reliance on that provision. *General Chem. Corp.,* 852 S.W.2d at 923–24.

Second, in *Drilex,* we cited *J.D. Abrams,* 966 S.W.2d at 96, to support our conclusion that the entire Flores family comprised one claimant. *See Drilex,* 1 S.W.3d at 122. In *J.D. Abrams,* McIver and her daughter, Lori Crane, sued several defendants to recover damages for Crane's injuries aris-

ing from a car accident. *J.D. Abrams*, 966 S.W.2d at 96. Three defendants settled, and the trial court allocated part of two settlements to McIver and the entire third settlement to Crane. *J.D. Abrams*, 966 S.W.2d at 96. The jury awarded Crane, but not McIver, damages against the non-settling defendant who was adjudged jointly and severally liable. The trial court credited the amounts Crane received from the settling defendants against her damage award. *J.D. Abrams*, 966 S.W.2d at 96. But the court of appeals held that the trial court should have granted the nonsettling defendant credit for the full amount the trial court allocated to Crane and McIver from all the settlements. *J.D. Abrams*, 966 S.W.2d at 96.

But the court in *J.D. Abrams*, and this Court in *Drilex*, ignored the fundamental flaw with defining "claimant" as multiple persons for purposes of applying settlement credits under section 33.012(b). That is, treating the entire family as one claimant—particularly when family members receive individual settlements in different amounts for their distinct losses—does not comport with Texas law which recognizes that derivative plaintiffs are asserting separate claims for their own losses caused by another person's injury or death. *See Reagan*, 804 S.W.2d at 467; *Whittlesey*, 572 S.W.2d at 668. No language in section 33.011 or section 33.012 suggests that the Legislature intended to group all derivative plaintiffs together as one claimant so that one derivative plaintiff's settlement wipes out another derivative plaintiffs' claims.

Indeed, *Drilex's* results demonstrate why our Chapter 33 analysis was wrong and leads to results inconsistent with Texas law. *See C & H Nationwide, Inc.*, 903 S.W.2d at 322 n. 5. Because we concluded that the entire Flores family was one claimant under section 33.012(b), we deter-

mined that the total damages the Flores family recovered had to be reduced by the total settlements the family received. *Drilex*, 1 S.W.3d at 122. After reducing the total jury award by Jorge Flores' contributory negligence, and then subtracting the total settlements from the reduced jury award, we allocated the remaining amount among the family members according to their respective percentages of the total jury award. *Drilex*, 1 S.W.3d at 123. Accordingly, the children, Jorge, and Maria each individually received some, but not all, of the amounts the jury awarded them. Our *Drilex* Chapter 33 analysis, therefore, permitted the Flores children to recover a part of their jury awards contrary to the one-satisfaction rule. Because each child settled for more than what the jury awarded him or her, each child's settlement should have eliminated their individual jury awards. Moreover, because we included the Flores children when we reallocated the reduced jury award, our analysis resulted in Jorge and Maria recovering less than what they should have from their jury awards.

Had *Drilex* applied what I now believe is the correct Chapter 33 analysis, we would have affirmed the court of appeals' calculations. *See Drilex Sys., Inc. v. Flores*, 961 S.W.2d 209, 214–15 (Tex.App.-San Antonio 1996), *aff'd as reformed and remanded, Drilex*, 1 S.W.3d at 124. Specifically, the court of appeals concluded that the three Flores children's individual settlements eliminated their individual jury awards, because they each settled for more than they recovered after trial. Jorge and Maria settled for a lump sum, and Jorge also settled individually. Both settlements were for less than Jorge and Maria recovered individually from the jury. Consequently, Jorge's and Maria's individual jury awards were reduced by 10% for Jorge's contributory negligence. Then, the court of appeals determined

Jorge's and Maria's percentage of recovery from the jury verdict, which was 95% for Jorge and 5% for Maria, and applied the same percentage of recovery from the lump-sum settlement. After crediting Jorge's and Maria's individual jury awards with their individual percentage of recovery to the lump-sum settlement, and after crediting Jorge's individual jury award with his individual settlement, the court of appeals awarded the reduced jury award to Jorge and Maria. *See Drilex,* 961 S.W.2d at 214–15.

It is evident, then, that my analysis carries out Chapter 33's purposes so that a derivative plaintiff's recovery is either (1) barred by the injured or deceased party's contributory negligence if greater than fifty percent, *or* (2) reduced by the injured or deceased party's contributory negligence if less than fifty percent and by any settlement amounts the derivative plaintiff receives. *See* TEX. CIV. PRAC. & REM.CODE §§ 31.001, 31.011(1), 31.012(a),(b). Moreover, my construction does not belie the one-satisfaction rule or Texas law recognizing derivative plaintiffs are asserting separate claims for their own losses, tangible and intangible, caused by injury to another person. *See Crown Life Ins. Co.,* 22 S.W.3d at 390; *Stewart Title Guar. Co.,* 822 S.W.2d at 8; *Reagan,* 804 S.W.2d at 467; *Whittlesey,* 572 S.W.2d at 668.

The dissent contends that *Drilex's* holding that claimant means the entire family for settlement credit purposes is in harmony with our wrongful death statute. 81 S.W.3d at 843 (Owen, J., dissenting). But section 71.010 actually supports my position that "claimant" under section 33.012(b) refers only to each individual derivative plaintiff just as section 33.011(1)'s first sentence provides. Section 71.010 provides that "[t]he jury may award damages in an amount proportionate to the injury resulting from the death" and that

"[t]he damages awarded shall be divided, in shares as found by the jury in its verdict, among the individuals who are entitled to recover and who are alive at that time." TEX. CIV. PRAC. & REM.CODE § 71.010(a), (b). This language shows that each derivative plaintiff suffers a distinct, apportionable injury because of a family member's death. Notably, neither section 71.010 nor any other law supports the dissent's contention that, when a defendant elects a dollar-for-dollar settlement credit, a jury may determine how much a settling plaintiff would have recovered had he or she remained in the suit. *See* 81 S.W.3d at 844 (Owen, J., dissenting).

Additionally, the dissent and Dr. Utts contend that overruling *Drilex* and *J.D. Abrams* is contrary to our recent statement that the *stare decisis* doctrine prevents changing a statutory interpretation even if that long-standing judicial interpretation was incorrect. *See Grapevine Excavation, Inc. v. Maryland Lloyds,* 35 S.W.3d 1, 5 (Tex.2000). And they urge that *stare decisis* exhorts us to "adhere to our precedents for reasons of efficiency, fairness and legitimacy." *See Weiner v. Wasson,* 900 S.W.2d 316, 320 (Tex.1995). The dissent and Dr. Utts also emphasize that the Legislature has met twice since *J.D. Abrams* issued and once since *Drilex* issued and has not amended the relevant Code provisions. They contend we should apply the legislative-acceptance doctrine in interpreting Chapter 33 and thus adhere to *Drilex.*

I agree that this Court should adhere to *stare decisis* and should not, without very good cause, change our previous statutory interpretation. However, this case is readily distinguishable from *Grapevine,* in which twenty years of precedent from this Court and courts of appeals constrained us to interpret a statute a particular way. *See Grapevine,* 35 S.W.3d at 5. *Drilex* is

only slightly over two years old, and while the Legislature has met once since we decided *Drilex*, Dr. Utts's motion for rehearing was pending during that entire session. And, in any event, the Legislature has not amended or reenacted Chapter 33 or sections 33.011(1) and 33.012 since *J.D. Abrams* and *Drilex* issued. Therefore, we are not confronted with the fact that the public or the legal community has become accustomed to the law under these cases. Nor are we confronted with the presumption that the Legislature has acquiesced in *Drilex's* Chapter 33 analysis. *See Grapevine*, 35 S.W.3d at 5 ("It is a firmly established statutory construction rule that once appellate courts construe a statute and the Legislature re-enacts or codifies that statute without substantial change, we presume that the Legislature has adopted the judicial interpretation.").

The dissent's accusation that my Chapter 33 analysis "advocates complete disregard for the Legislature's will" is unfounded. *See* 81 S.W.3d at 838 (Owen, J., dissenting). Rather, I believe this Court strayed from the Legislature's intent when we first construed Chapter 33 in *Drilex* and read language into section 33.011(1) that the Legislature did not write. I do not disagree with the dissent's position that the Legislature, in enacting Chapter 33, had the authority to change common law. *See* 81 S.W.3d at 839 (Owen, J., dissenting). But when we construe a statute, we presume that the Legislature acted with knowledge of the common law and court decisions. *Phillips v. Beaber*, 995 S.W.2d 655, 658 (Tex.1999). My Chapter 33 analysis adheres to this statutory-construction principle.

In sum, *Drilex's* troubling effect is that a settlement with any one derivative plaintiff can deprive all other possible derivative plaintiffs of their full recovery for their independent injuries when they did not receive any proceeds from the settlement. Accordingly, to apply Chapter 33 in a manner that is consistent with its purposes and our law, the Court should overrule *Drilex* to the extent that it concludes that "claimant," for purposes of applying settlement credits under section 33.012(b), means all family members suing for damages arising from another family member's injury or death.

Chief Justice PHILLIPS filed a concurring opinion, in which Justice JEFFERSON joins.

Justice OWEN filed a dissenting opinion, in which Justice HECHT and Justice RODRIGUEZ join.

Chief Justice PHILLIPS, joined by Justice JEFFERSON, concurring.

Chapter 33 of the Texas Civil Practices and Remedies Code creates a scheme for apportioning tort liability among parties and for determining the effect of settlements on a claimant's right to recover tort damages. *See* Tex. Civ. Prac. & Rem.Code §§ 33.001–33.016. The statute defines "claimant" as "a party seeking recovery of damages ..." *Id.* § 33.011. Because this language is written in the present tense, I believe that a plaintiff who settles or otherwise withdraws from a lawsuit is not a party seeking recovery of damages. Thus, Mrs. Walker ceased to be a claimant after she settled with HCA and non-suited her action against Dr. Utts.

Dr. Utts contends that despite the non-suit, he should be allowed to off-set the damages awarded by the jury to Mrs. Walker's mother and siblings by the amount of her settlement because Mrs. Walker was a claimant when she settled with HCA. The statute, however, apparently assumes not only that a claimant is a party seeking damages but also that the claimant will recover damages, because

settlement credits are to be deducted from the claimant's award. *Id.* § 33.012(b). Specifically, if a claimant has settled with one or more persons, the settlements may be applied in one of two ways to "reduce the amount of damages to be recovered by the claimant with respect to a cause of action." *Id.* A party who withdraws from a case and abandons her cause of action cannot recover damages and cannot receive an award that is capable of reduction by a settlement credit.

JUSTICE OWEN criticizes this application of the statute, suggesting that it reads into the definition of "claimant" limitations the Legislature did not intend. She points out that the definitions both of "defendant" and "settling person" include a temporal limitation, "at the time of submission", that is absent from the definition of "claimant." *See id.* § 33.011(1), (2), (5). She further notes that the Legislature defined "settling person" to mean only a settling defendant, not a settling plaintiff, at the time of submission. *See id.* § 33.011(5). It may be significant that the Legislature did not include a settling plaintiff, or for that matter a former claimant, but perhaps not for the reasons JUSTICE OWEN offers.

Under this statute, the trier of fact is to determine as to each cause of action the percentage of responsibility of the following persons: (1) each claimant; (2) each defendant; (3) each settling person; and (4) each responsible third party who has been joined under section 33.004. *Id.* § 33.003. A defendant who settles remains in the lawsuit as a settling person whose percentage of responsibility must be submitted. The Legislature decided, probably for purposes of making the settlement credit election, that the transformation from defendant to settling person had to occur on or before the submission of the case. On the other hand, no election is necessary when a plaintiff has settled or

otherwise abandoned his or her cause of action. Nor is there any reason to submit a plaintiff who has abandoned his or her cause of action, unless there is a claim that the former plaintiff contributed to cause another's injury. In short, the temporal limitations in the definitions of "defendant" and "settling person" are required for purposes of the settlement credit election. They need not be read to transform the meaning of "claimant" from "a party seeking recovery of damages" to a "former party" who "had sought" the recovery of damages. *See id.* § 33.011.

JUSTICE OWEN and JUSTICE BAKER disagree over whether we correctly applied this statute in *Drilex Systems, Inc. v. Flores,* 1 S.W.3d 112 (Tex.1999). JUSTICE BAKER argues that we misconstrued the statute's definition of "claimant" in *Drilex* and that the decision should be overruled. JUSTICE OWEN argues that *Drilex* correctly construes the statute, and she applies it to these facts. Under my view, the facts in this case are distinguishable from *Drilex.* Because the term "claimant" does not include a former plaintiff who has withdrawn from the lawsuit, we need not revisit *Drilex* here. Nor is it necessary to overrule *Drilex* to decide this case. I must concede, however, that any of the readings offered by the Court's opinions today are plausible. I hope the Legislature will consider the policy implications raised by JUSTICE OWEN and JUSTICE BAKER and clarify the intent of the law.

Finally, I consider Dr. Utts' contention that Mrs. Walker's settlement was actually for the benefit of all claimants and that her position as the sole recipient of the settlement was merely a sham. I agree that the circumstances surrounding the distribution of the settlement proceeds in this case are sufficient to raise an issue regarding the legitimacy of the transaction. I join in Parts I–IV of JUSTICE BAKER's opinion, and

I concur in the Court's judgment to remand the cause to the trial court for further proceedings on this question.

Justice OWEN, joined by Justice HECHT and Justice RODRIGUEZ, dissenting.

On rehearing, my opinion of February 28, 2002 is withdrawn, and the following is substituted in its place.

This case has been pending before this Court for more than three years. After issuing opinions, granting rehearing (twice), withdrawing the original opinions, and issuing new ones, a majority of the Court is still unable to agree on what "the claimant" means in Chapter 33 of the Texas Civil Practice and Remedies Code when family members sue as derivative plaintiffs to recover for the injury or death of another family member and one or more settle and withdraw from the suit before trial. There are three different views presently held by MEMBERS of this Court (a fourth view, which was expressed in JUSTICE HANKINSON's concurring opinion in our prior array of decisions in this case, has been abandoned on rehearing),[1] with no view garnering the support of a majority. In light of today's "resolution" of this case, we can only hope that the Legislature will act promptly to say with unmistakable clarity how settlement credits are to be applied in cases such as this.

There is at least a consensus of a majority of the Court on one point: *Drilex Systems, Inc. v. Flores*[2] remains good law when family members settle but remain parties pursuing claims against a non-settling defendant. I agree with the concurring opinion of CHIEF JUSTICE PHILLIPS to

the extent that it concludes that *Drilex* remains authoritative and has not been overruled. I part company with that concurring opinion and JUSTICE BAKER's concurring opinion because neither correctly interprets what the Legislature meant when it used the term "the claimant" in Chapter 33 of the Texas Civil Practice and Remedies Code when one family member settles and withdraws from the case, but other family members continue to sue.

The concurring opinion of CHIEF JUSTICE PHILLIPS would eliminate settlement credits for payments to a settling family member if he or she non-suited all claims before the case was submitted to the jury, even though the definition of "the claimant" in section 33.001 does not support this construction. Indeed, the Legislature explicitly included the words "at the time of submission" in other definitions in section 33.011, but not in the definition of "claimant."

JUSTICE BAKER's concurring opinion sweeps *stare decisis* aside in advocating that we overrule *Drilex*, decided less than three years ago. JUSTICE BAKER's opinion also advocates complete disregard of the Legislature's will in several respects. That concurring opinion would only give effect to the Legislature's express definition of "the claimant" when those words are used in subsection 33.012(a), but not when they are used in subsection (b).[3] Nor would JUSTICE BAKER's concurring opinion give effect to the Legislature's directive in subsection 33.012(b)(1) that a non-settling defendant must be given credit for "the sum of the dollar amounts of *all* settlements" if it so elects.[4] Non-settling defendants would receive only partial cred-

---

1. *Utts v. Short*, 44 Tex. Sup.Ct. J. 134, 138, 2000 WL 1784846 (Dec. 7, 2000) (Hankinson, J., concurring), *op. withdrawn on reh'g.*

2. 1 S.W.3d 112 (Tex.1999).

3. TEX. CIV. PRAC. & REM.CODE § 33.012.

4. *Id.* § 33.012(b)(1) (emphasis added).

it under JUSTICE BAKER's analysis. JUSTICE BAKER's opinion asserts that rewriting the statute is justified because judge-made law should be paramount over the Legislature's directives. JUSTICE BAKER's concurring opinion concludes that to read the Legislature's enactment as written would lead to "absurd results," not because the results are truly absurd, but because judge-made common law might be changed. As I explain in greater detail below, the common-law one-satisfaction principle remains intact under the Legislature's settlement credit scheme because "the claimant," which is the family unit, recovers only what the jury awarded it collectively, less all settlements. But even were the one-satisfaction rule impacted, that would not be a basis for refusing to give full effect to a statute. Within constitutional confines, the Legislature is free to change the common law if it so chooses.

I would give effect to the language chosen by the Legislature. In section 33.012, "the claimant" must be construed to include all those who claim damages for the injury or death of another person as well as that injured or deceased person. Section 33.012(b) requires that any recovery by "the claimant" must be reduced by a settlement with one or more family members, regardless of when they settle. The family members are, however, entitled to have the jury determine the amount of damages that should be apportioned to each, whether they have settled or not. I would therefore reverse the judgment of the court of appeals and remand this case for a new trial so that a jury can determine the amount of damages sustained by Dorothy Short Walker, her mother, siblings, and her father's estate, and the settlement dollars paid to Walker can be credited in the same manner as the Court did in *Drilex*.

## I

Clifton Short died while under the care of Dr. James Utts at a hospital owned and operated by HCA Health Services of Texas, Inc. Short's estate, his widow, and the Shorts' four adult children sued Utts, HCA, and another physician, Jean–Pierre Forage. All claims against Forage were later nonsuited. Before trial, one of the Shorts' children, Dorothy Short Walker, settled with HCA for $200,000. The other five plaintiffs settled with HCA for ten dollars ($10.00) each. Walker non-suited her claims against Utts, but Clifton Short's estate and the other Short family members did not.

The settlement agreement between Walker and HCA provided that $50,000 of the $200,000 was to be paid to Walker and $150,000 was to be paid to the law firm that represented her and the other Short plaintiffs. The record reflects that the entire $200,000 was paid into the law firm's trust account, but there is correspondence in which Walker directed an attorney with that firm to distribute $10,000 each to her mother and her three siblings from "any monies belonging to me that he or his firm may have in his possession." Walker's counsel stated on the record in the trial court that Walker executed a document permitting him "to put $150,000 into my trust account" to pay litigation fees and expenses for which Walker was jointly and severally liable. Thus, of the $200,000 settlement paid to Walker, 75% of it went to the Short family's attorneys, $40,000 went to Short family members other than Walker, and Walker kept $10,000.

The claims of the remaining Short plaintiffs against Utts proceeded to trial. Before the case was submitted to the jury, Utts requested a dollar-for-dollar settlement credit under section 33.012(b)(1) of the Texas Civil Practice and Remedies

Code.[5] Utts contended that the credit should be $200,050, the total amount paid by HCA to settle the Short family's claims against it. Utts relied on the provision in section 33.012(b)(1) that says "[i]f the claimant has settled with one or more persons, the court shall . . . reduce the amount of damages to be recovered by the claimant" by "the sum of the dollar amounts of all settlements" if elected by the defendant.[6] The Short plaintiffs countered that only a $50 credit was permissible, which was the sum of the $10.00 payments to each of the five Short plaintiffs other than Walker. They took the position that Walker was no longer a "claimant" when the case went to trial because she was no longer a party to the suit.

The jury awarded the following damages:

| | |
|---|---|
| Estate of Clifton Short | $100,000 |
| Norma Short | $300,000 |
| Dennie Short | $ 12,000 |
| Patricia Short Cain | $ 12,000 |
| Sam Short | $ 12,000 |

The jury found that 25% of the negligence in treating Clifton Short was attributable to Utts and 75% was attributable to HCA. The trial court entered judgment against Utts in accordance with this verdict after allowing only a $50 settlement credit for the HCA settlement.

Dr. Utts appealed. The court of appeals affirmed the trial court's judgment in all respects, although it did not agree with the Short plaintiffs' interpretation of Chapter 33.[7] The court of appeals concluded that each wrongful death beneficiary was a separate "claimant" under section 33.012,[8] and that "only the settling claimant's damages shall be reduced by the amount of that claimant's settlement."[9] The court of appeals therefore held that Utts was not entitled to any credit for the settlement paid to Dorothy Walker since Walker did not seek and did not recover damages from Utts.[10]

## II

In construing the statutes at issue, we all agree that the statutes themselves are the starting point. I begin with section 33.012, which is where the Legislature directed that settlement credits must be given.[11] Section 33.012 uses the words "the claimant" throughout. Section 33.012 first directs how the damages to be recovered by "the claimant" are to be reduced for "the claimant's" percentage of responsibility:

(a) If the claimant is not barred from recovery under Section 33.001, the court shall reduce the amount of damages to be recovered by the claimant with respect to a cause of action by a percentage equal to the claimant's percentage of responsibility.[12]

Section 33.012 then directs how the damages to be recovered by "the claimant" are to be further reduced if "the claimant" has settled with one or more persons:

(b) If the claimant has settled with one or more persons, the court shall further reduce the amount of damages

5. TEX. CIV. PRAC. & REM.CODE § 33.012(b)(1).

6. *Id.*

7. *Utts v. Short,* 987 S.W.2d 626, 630–31 (Tex. App.-Austin 1999, pet. granted).

8. *Id.* at 631 (holding that "[b]ecause each wrongful death beneficiary has an individual, personal injury, we hold that the settlement of

one claimant cannot be applied against the recovery of a different claimant").

9. *Id.* at 630 (emphasis omitted).

10. *Id.* at 633.

11. TEX. CIV. PRAC. & REM.CODE § 33.012.

12. *Id.* § 33.012(a).

to be recovered by the claimant with respect to a cause of action by a credit equal to one of the following, as elected in accordance with Section 33.014:

(1) the sum of the dollar amounts of all settlements; or

(2) a dollar amount equal to the sum of the following percentages of damages found by the trier of fact:

(A) 5 percent of those damages up to $200,000;

(B) 10 percent of those damages from $200,001 to $400,000;

(C) 15 percent of those damages from $400,001 to $500,000; and

(D) 20 percent of those damages greater than $500,000.[13]

It is obvious that an injured person or the estate of a deceased person who seeks damages is "the claimant" within the meaning of section 33.012. But who is "the claimant" when family members of the injured person or of the decedent seek damages? Section 33.011(1) defines "Claimant":

(1) "Claimant" means a party seeking recovery of damages pursuant to the provisions of Section 33.001, including a plaintiff, counterclaimant, cross-claimant, or third-party plaintiff seeking recovery of damages. In an action in which a party seeks recovery of damages for injury to another person, damage to the property of another person, death of another person, or other harm to another person, "claimant" includes both that other person and the party

seeking recovery of damages pursuant to the provisions of Section 33.001.[14]

Only certain family members can seek damages for the death of or injury to another person.[15] Those are the spouse, children, and parents.[16] Section 33.011(a) says that a family member who seeks damages, together with the person who is injured or dies, is included within the meaning of "claimant." The question then arises, who is included within "claimant" if more than one family member brings a derivative claim.

Each person who sues for his or her own derivative injuries is claiming under and through the injured or deceased person.[17] The definition of "claimant" dictates that each family member becomes connected with the injured or deceased person. Importantly, section 33.011 does not imply that the injured person or the deceased can be considered part of "the claimant" more than once. Based on the express definition of the "claimant," each family member is joined with the injured or deceased person, and accordingly, each is in turn joined with other relatives for purposes of the definition of "claimant." Chapter 33 treats the injured or deceased person as the hub when claims are made for his or her injury or death. There can be one or more spokes emanating from that hub. These spokes are the derivative claims of a spouse, child, or parent of the injured or deceased person. But each spoke is part of the whole. Each family member is part of "the claimant," joined at the center because of his or her relationship to the injured or deceased person.

13. *Id.* § 33.012(b).

14. *Id.* § 33.011(1).

15. *See id.* § 71.004(b) (identifying who may recover under the wrongful death statutes); *Ford Motor Co. v. Miles,* 967 S.W.2d 377, 383–84 (Tex.1998) (setting forth who may re-

cover under the common law for injuries to another person).

16. TEX. CIV. PRAC. & REM.CODE § 71.004(b); *Miles,* 967 S.W.2d at 383.

17. *See Russell v. Ingersoll–Rand Co.,* 841 S.W.2d 343, 347 (Tex.1992).

We so held in *Drilex*.[18]  In that case, Jorge Flores, a husband and father, was catastrophically injured.  He, his wife, and his children sued two defendants.  All the plaintiffs settled with one defendant.  In the trial against the remaining defendant, the jury awarded damages to each of the plaintiffs.  We were called upon to determine how the settlement credit required by section 33.012(b) should be applied. We held that "under the plain language of section 33.011(1), the term 'claimant' in section 33.012(b)(1) includes all of the family members."[19]  We rejected the arguments that the Short family makes in the case before us today.  We said that "[i]f the Legislature had intended that each of the parties seeking recovery for damages for the same person be treated as individual claimants, it could easily have written the statute" to say so.[20]

In *Drilex*, we cited with approval[21] a case in which the facts were analogous to those in this case, *J.D. Abrams, Inc. v. McIver*.[22]  In *McIver*, Lori Crane was severely injured.  Her mother, Joyce McIver, sued in her individual capacity and as the guardian of Crane's estate.[23]  Prior to trial, settlements were reached with several defendants, totaling $2,497,175.[24]  The jury subsequently awarded Crane $13,500,000, but no damage issue was submitted to the jury for her mother's individual claims.[25]  The trial court allowed a settlement credit of only $1,782,881.20, the aggregate amount of the settlements it had allocated to Crane.[26]  The court of appeals reversed, holding that the full amount of the settlements, including the amounts paid to McIver for her individual claims, must be applied to reduce the judgment in favor of Crane.[27]  The court of appeals concluded that under section 33.012, "claimant" included both McIver, who was a derivative plaintiff, and Crane, the injured person.[28]  The court in *McIver* rejected the argument that is now made by the Short family in this case:

> Crane also contends that this result would make her give a credit for money she never received, money that by court order went to another person, McIver, for McIver's own losses.  While that is true, we believe the legislature intended this result in order to protect defendants from plaintiffs who would manipulate settlements among those "seek(ing) recovery of damages for injury to another person."[29]

In *Drilex*, we, too, rejected the argument that settlements paid to a family member should not be deducted from the recovery by other family members.  In approving the analysis in *J.D. Abrams v. McIver*, a unanimous Court reiterated that "the claimant" as used in sections 33.011 and 33.012 meant "the entire family":

> As noted by the First Court of Appeals in *McIver*, a claimant's recovery is reduced only by the amount of settlement money already received by that claim-

---

18. *Drilex Sys., Inc. v. Flores*, 1 S.W.3d 112, 122–23 (Tex.1999).

19. *Id.* at 122.

20. *Id.*

21. *Id.* at 122–23.

22. 966 S.W.2d 87 (Tex.App.-Houston [1st Dist.] 1998, pet. denied).

23. *Id.* at 90 n. 2, 96.

24. *Id.* at 97.

25. *Id.* at 96–97.

26. *Id.* at 96.

27. *Id.* at 96–97.

28. *Id.* at 96.

29. *Id.* at 97.

ant. *McIver*, 966 S.W.2d at 96–97. In this case, the entire family is treated as one claimant; therefore, all of the settlement money must be deducted from the family's recovery. If, however, there were another claimant (for example, a second injured employee), that claimant's settlements would not be deducted from the Flores family's recovery, and similarly, the Flores family's settlement would not affect the other claimant's recovery.[30]

In *Drilex*, we were fully apprised that the statute's plain language might lead to seeming inequities. We observed, "some plaintiffs may recover more than the amount awarded by the jury, and some plaintiffs' awards will be reduced by settlement amounts paid to other plaintiffs."[31] We nevertheless recognized our obligation to apply the statute as written, not as we might have written it if we were the Legislature: "Although such results may seem harsh, they are mandated by the statutory language and are consistent with legislative intent."[32]

Although we observed in *Drilex* that "harsh results" might occur under section 33.012, we did not have occasion to consider in any detail whether inequities might occur in applying the settlement credit provisions when some but not all family members settle. Now that the Court is presented with a case in which one of several family members has settled and withdrawn from the suit, we have been given the benefit of more focus on the particular question of how "the sum of the dollar amounts of all settlements" is to "reduce the amount of damages to be re-

covered by the claimant."[33] On examining the statute with this question in mind, it appears that "harsh results" are not likely in cases like this one. A reasonable construction of section 33.012 is that it permits non-settling family members to obtain jury findings as to the damages to be apportioned to each family member, including those who have settled. The total settlement amounts are then deducted from the damages awarded to "the claimant," not just from the damages awarded to non-settling members of "the claimant."

The words "the claimant" as used in Chapter 33, mean "the claimant" for all purposes. When one family member settles, it is a settlement by "the claimant" even if only that one family member receives payment. That is because, as discussed above, section 33.011(1) defines "claimant" to include a party seeking damages for the death of or injury to another person together with the person who has been injured or killed.[34] If others are also seeking damages for the death of or injury to the same person, they are linked through that injured or deceased person to all who have derivative claims. By the same token, when section 33.012(b) says with regard to settlements that "the court shall further reduce the amount of damages to be recovered by the claimant," "the amount of damages to be recovered by the claimant" includes a settling family member even though the settlement may bar that individual from actually receiving what the jury awards.

This is in harmony with how the wrongful death statutes view derivative claims of

---

30. *Drilex*, 1 S.W.3d at 123 n. 10 (emphasis omitted); *see also id*. at 126 (Owen, J., dissenting from the judgment but agreeing with the Court's analysis and resolution of the settlement credits issue).

31. *Id*. at 123.

32. *Id*.

33. TEX. CIV PRAC & REM.CODE § 33.012(b)(1).

34. *Id*. § 33.011(1).

family members. The wrongful death statutes treat all family members' injuries resulting from the death of another family member as a single injury, with damages divided by the jury into "shares" among the individual beneficiaries:

> (a) The jury may award damages in an amount proportionate to the injury resulting from the death.
>
> (b) The damages awarded shall be divided, in shares as found by the jury in its verdict, among the individuals who are entitled to recover and who are alive at that time.[35]

As we explained more than fifty years ago, each individual wrongful death beneficiary has the right to recover damages proportionate to his or her injury, but there is but one sum to be recovered and divided among them in a single action:

> The statute gives the right of action to all the persons within the classes named to recover one sum. That sum must be apportioned among those persons according to their several rights, but under the statute there can be but one action.[36]

In determining "an amount proportionate to the injury resulting from the death,"[37] a jury should be able to consider all the beneficiaries, even those who have settled, if dollar-for-dollar settlement credits have been claimed by a non-settling defendant. The fact that a settlement may preclude a beneficiary from actually receiving the amount awarded by the jury should not affect what the jury is to decide under the wrongful death statutes and under section 33.012(b), which is the total injury resulting to all statutory beneficiaries. Any settlement amounts should be deducted from the total award to all family members, and the remaining recovery should be allocated to non-settling family members based on the percentage that the jury award to each bears to the total amount found by the jury as damages suffered by the non-settling plaintiffs. An example of the mathematical calculation is included in Appendix A.

The Short plaintiffs argue that in some cases, family members are hostile towards one another and a settling family member may not be inclined to cooperate with the remaining plaintiffs in proving the settling person's damages. While this may be true in some instances, that is not a basis for construing "the claimant" to mean something other than what the Legislature has said it means. Moreover, defendants face similar difficulties in cases in which they ask the jury to determine the percentage of responsibility of a "settling person" (i.e., a settling defendant) or a "responsible third party" under section 33.003.[38]

In this case, the Short plaintiffs should be entitled to ask a jury to divide the amount it finds to be "proportionate to the injury resulting from the death"[39] of Clifton Short into shares among each of the beneficiaries, including Dorothy Walker. From the total amount of damages awarded to the widow and children of Clifton Short, Utts should be entitled to a settlement credit for all settlement amounts, which in this case would be $200,050, because that is what section 33.012 requires. "If the claimant has settled with one or more persons, the court shall further reduce the amount of damages to be recovered by the claimant ... by a credit equal

---

35. *Id.* § 71.010.

36. *Texas & P. Ry. Co. v. Wood,* 145 Tex. 534, 199 S.W.2d 652, 654 (1947).

37. Tex. Civ. Prac. & Rem.Code § 71.010(a).

38. *Id.* § 33.003.

39. *Id.* § 71.010(a).

to ... the sum of the dollar amounts of *all* settlements." [40] I would hold that the trial court erred in refusing to give Utts credit for the full amount of the settlement paid to Dorothy Walker, and that the court of appeals' judgment affirming the trial court must be reversed. Although the Short plaintiffs did not ask the trial court to submit the question of Dorothy Walker's damages to the jury, in the interest of justice, I would further hold that the Short plaintiffs are entitled to a new trial to have that determination made if they so choose. [41]

### III

CHIEF JUSTICE PHILLIPS's concurring opinion confirms that *Drilex* was correctly decided. But CHIEF JUSTICE PHILLIPS's opinion concludes that when a party settles and withdraws from the case, that party can no longer be considered part of "the claimant" and no credit should be given for settlement dollars paid to that settling party. [42] CHIEF JUSTICE PHILLIPS's opinion advocates that only those remaining as plaintiffs at the time the case is submitted to the jury can be "claimants."

This construction of "claimant" effectively inserts the words "at the time of the submission of the case to the trier of fact" at the end of the definition of "claimant" in section 33.011(1):

> (1) "Claimant" means a party seeking recovery of damages pursuant to the provisions of Section 33.001, including a plaintiff, counterclaimant, cross-claimant, or third-party plaintiff seeking recovery of damages. In an action in which a party seeks recovery of damages for injury to another person, damage to the property of another person, death of another person, or other harm to another person, "claimant" includes both that other person and the party seeking recovery of damages pursuant to the provisions of Section 33.001 [at the time of the submission of the case to the trier of fact]. [43]

But when the Legislature intended to impose such temporal limitations, it said so plainly, as it did in the subsection immediately following 33.011(1):

> (2) "Defendant" includes any party from whom a claimant seeks recovery of damages pursuant to the provisions of Section 33.001 *at the time of the submission of the case to the trier of fact.* [44]

If "claimant" meant only a person remaining as a party at the time the case is submitted to the jury, then it would have been entirely unnecessary to include the phrase "at the time of submission of the case to the trier of fact" in subsection 33.011(2).

The Legislature took pains to include the limitation "at the time of submission" in subsection (5) of section 33.011 in defining a "settling person." The Legislature defined "settling person" to mean only a settling defendant, not a settling plaintiff, "at the time of submission":

> (5) "Settling person" means a person who at the time of submission has paid or promised to pay money or anything of monetary value to a claimant at any time in consideration of potential liability pursuant to the provisions of Section 33.001 with respect to the personal injury, property damage, death, or other

---

40. *Id.* § 33.012(b) (emphasis added).

41. TEX.R.APP. P. 60.3.

42. 81 S.W.3d at 837.

43. TEX. CIV. PRAC. & REM.CODE § 33.011(1).

44. *Id.* § 33.011(2) (emphasis added).

harm for which recovery of damages is sought.[45]

The Legislature did not impose a similar limitation in defining "claimant." It did not say that a claimant is only a person who remains a party at the time the case is submitted to the jury. When the Legislature includes a qualifier such as "at the time of the submission of the case to the trier of fact," as it did in subsections 33.011(2) and 33.011(5), and omits it in other subsections of the same provision, as it did in subsection 33.011(1), we should presume that the exclusion was intentional. As we said in *Laidlaw Waste Systems (Dallas), Inc. v. Wilmer*, "[w]hen the Legislature employs a term in one section of a statute and excludes it in another section, the term should not be implied where excluded."[46] Courts must take the words of the Legislature as they find them.

## IV

The Short family asks and four MEMBERS of this Court advocate in JUSTICE BAKER's concurring opinion that we overrule *Drilex*.[47] A majority of the Court properly declines to do so for a number of reasons, not the least of which is that *Drilex* was correctly decided.

Our construction of sections 33.011 and 33.012 in *Drilex* was dictated by the words that the Legislature chose. The portion of the *Drilex* decision that dealt with settlement credits was unanimous. The Court was asked on rehearing in *Drilex* to reconsider the settlement credits issues among others, and we did so for almost one year. The Court then withdrew its original opinion, but in the substituted opinion, the section dealing with settlement credits and how "claimant" must be construed remained unchanged. We construed the statutes as their text requires: "under the plain language of section 33.011(1), the term 'claimant' in section 33.012(b)(1) includes all of the family members."[48] We continued, "[b]ecause we must view the entire Flores family as one claimant for section 33.012(b)(1) purposes, the total of all damages to be recovered by the family must be reduced by the total of all settlements received by the family."[49]

Each of us, including all four MEMBERS of the Court who today join in JUSTICE BAKER's concurring opinion, had an extended opportunity in *Drilex* to consider what we all agreed at the time was the "plain language" found in sections 33.011 and 33.012.[50] We fully understood the import of our decision, going so far as to say that the statutes might, in some situations, "result in 'gross inequities.'"[51] But we unanimously recognized that such results "are mandated by the statutory language and are consistent with legislative intent."[52]

But even were a majority of the Court to now have doubts about our prior construction of Chapter 33, overruling *Drilex* and adopting an abrupt change would not be a prudent or wise jurisprudential course on which to embark. This Court has long recognized that it is in the area of statutory construction that *stare decisis* has its greatest force.[53] As the United

45. *Id.* § 33.011(5).

46. 904 S.W.2d 656, 659 (Tex.1995) (citation omitted).

47. 1 S.W.3d at 115.

48. *Drilex Sys., Inc. v. Flores*, 1 S.W.3d 112, 122 (Tex.1999).

49. *Id.*

50. *See id.* at 122–23.

51. *Id.* at 123.

52. *Id.*

53. *Marmon v. Mustang Aviation, Inc.*, 430 S.W.2d 182, 186 (Tex.1968); *Moss v. Gibbs*, 370 S.W.2d 452, 458 (Tex.1963).

States Supreme Court explained, "when the questions are of statutory construction, not of constitutional import, Congress can rectify our mistake, if such it was, or change its policy at any time, and in these circumstances reversal is not readily to be made." [54]

We issued our opinion on rehearing in *Drilex* in August 1999, and there was no further rehearing of that decision. The Legislature thereafter met in the 2001 session and did not alter section 33.011 or section 33.012. We presume that the Legislature was aware of how this Court had construed those sections and that the Legislature's failure to amend them indicates its acceptance of that construction. As we explained in *Marmon v. Mustang Aviation, Inc.*, "[a] statute is the creation of the Legislature and should an interpretation of a statute by the courts be unacceptable to the Legislature, a simple remedy is available by the process of legislative amendment." [55]

Apparently, the JUSTICES joining JUSTICE BAKER's concurring opinion disagree that *stare decisis* is a compelling reason to abide by previous constructions of a statute. But less than two years ago, the same MEMBERS of the Court said in *Grapevine Excavation, Inc. v. Maryland Lloyds*,[56] that "stare decisis demands the result we reach here. Stare decisis has its greatest force in statutory construction cases. Adhering to precedent fosters efficiency, fairness, and legitimacy. More practically, it results in predictability in

the law, which allows people to rationally order their conduct and affairs." [57]

JUSTICE BAKER's concurring opinion argues that the Court should not presume that the Legislature acquiesced in *Drilex's* interpretation of "the claimant" because rehearing of our original decision in this case, *Utts*, was pending when the Legislature adjourned. That argument ignores two important facts. The first is that *Drilex* was in full force and effect as precedent when the Legislature adjourned in 2001 and had been the law since August 1999. The second is that a majority of the Court in our original decisions in *Utts* reaffirmed *Drilex*,[58] as we do today. The first *Utts* opinions were issued in January 2000, prior to the commencement of the 2001 legislative session. Although, as noted above, a majority of the Court could not agree on how sections 33.011 and 33.012 were to be construed and applied to facts that differed from *Drilex*, a majority confirmed that *Drilex* governs how settlement credits are to be applied when a settling plaintiff remains a party to the case. Although the motion for rehearing in *Utts* was outstanding when the 2001 legislative session ended (we granted the motion for rehearing on June 7, 2001, ten days after the end of the session), before, during, and at the close of the last legislative session, *Drilex* had authoritatively construed "the claimant" as used in sections 33.011 and 33.012 to mean "all of the family members" [59] when they all remain parties to the suit while pointedly noting that harsh re-

---

54. *United States v. South Buffalo Ry.*, 333 U.S. 771, 775, 68 S.Ct. 868, 92 L.Ed. 1077 (1948) (citing *Massachusetts v. United States*, 333 U.S. 611, 68 S.Ct. 747, 92 L.Ed. 968 (1948)).

55. 430 S.W.2d at 186 (citing *United States v. South Buffalo Ry.*, 333 U.S. 771, 775, 68 S.Ct. 868, 92 L.Ed. 1077 (1948)).

56. 35 S.W.3d 1 (Tex.2000).

57. *Id.* at 5 (citations omitted).

58. *Utts v. Short*, 44 Tex Sup.Ct. J. 134, 136, 2000 WL 1784846 (Dec. 7, 2000) (Gonzales, J., concurring), 143 (Owen, J., concurring), *ops. withdrawn on reh'g.*

59. *Drilex*, 1 S.W.3d at 122.

sults may occur under the statutes.[60] The only issue left open in our original *Utts* opinions was how Chapter 33 was to be construed when one plaintiff settles before trial, a situation different from that in *Drilex*.

## V

Undaunted by *stare decisis* and the analysis that we all agreed was correct in *Drilex*, JUSTICE BAKER's concurring opinion says that we should ignore the second sentence in the definition of "claimant" in construing subsection 33.012(b) (dealing with settlement credits) even though we must give effect to that sentence in subsection 33.012(a) (dealing with comparative responsibility). This is a remarkable position, unsupported by any authority. It would be highly unusual for this or any other court to hold that a term expressly defined in a statute has one meaning in one sentence of that statute, and a different meaning when used in the very next sentence.

"Claimant" is defined in section 33.011(1):

(1) "Claimant" means a party seeking recovery of damages pursuant to the provisions of Section 33.001, including a plaintiff, counterclaimant, cross-claimant, or third-party plaintiff seeking recovery of damages. In an action in which a party seeks recovery of damages for injury to another person, damage to the property of another person, death of another person, or other harm to another person, "claimant" includes both that other person and the party seeking recovery of damages pursuant to the provisions of Section 33.001.[61]

Section 33.012 then uses the words "the claimant" three times in subsection (a), and twice in subsection (b):

(a) If *the claimant* is not barred from recovery under Section 33.001, the court shall reduce the amount of damages to be recovered by *the claimant* with respect to a cause of action by a percentage equal to *the claimant's* percentage of responsibility.

(b) If *the claimant* has settled with one or more persons, the court shall further reduce the amount of damages to be recovered by *the claimant* with respect to a cause of action by a credit equal to one of the following, as elected in accordance with Section 33.014:

(1) the sum of the dollar amounts of all settlements; or

(2) a dollar amount equal to the sum of the following percentages of damages found by the trier of fact:

(A) 5 percent of those damages up to $200,000;

(B) 10 percent of those damages from $200,001 to $400,000;

(C) 15 percent of those damages from $400,001 to $500,000; and

(D) 20 percent of those damages greater than $500,000.[62]

"Claimant" means the same thing in both subsections (a) and (b). The statutory definition of "claimant" cannot be parsed to give effect to the second sentence in subsection (a) but not subsection (b).

What justification does JUSTICE BAKER's concurring opinion offer for refusing to give effect to the second sentence in the definition of "claimant"? An "absurd result," the opinion says. The result would be "absurd," JUSTICE BAKER's concurring opinion concludes, because it would over-

---

60. *Id.* at 123.

61. TEX. CIV. PRAC. & REM CODE § 33.011(1).

62. *Id.* § 33.012(a),(b) (emphasis added).

ride the one-satisfaction rule and "Texas law." In other words, the statute would change the common law, and when the Legislature does that, the results are necessarily absurd.

Assuming for the moment that Texas law might be modified by sections 33.011 and 33.012, the Legislature may change the common law by statute if it so chooses, as long as the state and federal constitutions are not violated. No one has suggested that the settlement credit scheme devised by the Legislature is unconstitutional. JUSTICE BAKER's concurring opinion repeatedly states that in light of "Texas law," the Legislature could not have meant what it said.[63] This ignores the fact that "Texas law" is what the Legislature decides it is, even if it overrides the common law. A court cannot refuse to give effect to a statute simply because it alters the common law.

But sections 33.011 and 33.012 do not abrogate the one-satisfaction rule. The one-satisfaction rule analysis in JUSTICE BAKER's concurring opinion depends entirely on that opinion's definition of "the claimant," not the Legislature's. JUSTICE BAKER's concurring opinion says that "the claimant" means each individual family member. But that is not what section 33.011(1) says. The Legislature intended "the claimant" to mean all family members who assert a claim, as a unit. There can be no over-recovery by a family unit under section 33.012. The settlement credits are applied to the entire family's claim. Viewed as a single unit, as intended by the Legislature, "the claimant" will receive only the total amount awarded by the jury less the settlement credits.

JUSTICE BAKER's concurring opinion ignores another directive in section 33.012, which is that a non-settling defendant is entitled to a dollar-for-dollar credit for *all* settlement payments if it so elects.[64] JUSTICE BAKER's concurring opinion argues that settlement credits should have been allocated in *Drilex* as the court of appeals had done.[65] But if this Court had followed the reasoning of the court of appeals, the non-settling defendant in *Drilex* would not have received credit for "the sum of the dollar amounts of all settlements."[66] In *Drilex* Jorge Flores was injured. He, his wife, and their three children sued two defendants. Prior to trial, each member of the Flores family settled with one defen-

---

**63.** The opinion says:
  - "However, reading Chapter 33 as a whole and under well-established Texas law, it is evident that the Legislature did not intend for section 33.011(1)'s second sentence to provide a separate definition of 'claimant.'" 81 S.W.3d at 832.
  - "This analysis gives all the language in sections 33.001, 33.011(1), and 33.012 meaning that comports with Texas law." 81 S.W.3d at 833.
  - "[T]reating the entire family as one claimant-particularly when family members receive individual settlements in different amounts for their distinct losses—does not comport with Texas law which recognizes that derivative plaintiffs are asserting separate claims for their own losses caused by another person's injury or death." 81 S.W.3d at 834.

  - "*Drilex's* results demonstrate why our Chapter 33 analysis was wrong and leads to results inconsistent with Texas law." 81 S.W.3d at 834.
  - "Moreover, my construction does not belie the one-satisfaction rule or Texas law recognizing derivative plaintiffs are asserting separate claims for their own losses, tangible and intangible, caused by injury to another person." 81 S.W.3d at 835.

**64.** TEX. CIV. PRAC. & REM CODE § 33.012(b)(1).

**65.** 1 S.W.3d at 115 (citing *Drilex Sys., Inc. v. Flores*, 961 S.W.2d 209 (Tex.App.-San Antonio 1998), *reversed* 1 S.W.3d 112 (Tex.1999)).

**66.** TEX. CIV. PRAC. & REM.CODE § 33.012(b)(1).

dant for a total of $774,675. In an agreed judgment, specific settlement amounts were allocated to each plaintiff. In calculating settlement credits, the court of appeals reduced the jury's award to each plaintiff by 10%, which was the percentage of fault attributed to Jorge Flores by the jury, and performed other calculations not relevant here. The court of appeals then erroneously calculated the judgment against the non-settling defendant by treating each family member as a separate "claimant" and applying settlement credits allocated to each family member only to the amount of the jury award to that family member:

| Plaintiff: | Jury Award (less 10%): | Settlement Credit: | Unapplied Settlement Credit: | Judgment: |
|---|---|---|---|---|
| Jorge Flores | 1,800,000 | (671,491.90) | 0 | 1,128,508.10 |
| Maria Flores | 90,000 | (20,238.10) [67] | 0 | 69,761.90 |
| Gina Flores | 13,500 | (29,374) | 15,874 | 0 |
| Jose Flores | 13,500 | (27,286) | 13,786 | 0 |
| Georgette Flores | 13,500 | (26,285) | 12,785 | 0 |
| | $1,930,500 | ($774,675) | $42,445 | $1,198,270.00 [68] |

Had the court of appeals treated the family as a single claimant, the entire settlement amount of $774,675 would have been deducted from the jury's total award to the family (after that award had been reduced by 10%). That would have resulted in subtracting $774,675 from $1,930,500, for a judgment of $1,155,825. That is what this Court did in *Drilex*. Instead, the court of appeals' methodology would have resulted in a judgment of $1,198,270, which meant that the non-settling defendant would not have gotten credit for $42,445. The court of appeals did not give the non-settling defendant any credit for the amount by which the settlement payments to the Flores children exceeded the jury awards to them.

The Legislature was free to make the call that when family members sue for derivative claims, a non-settling defendant is entitled to full credit for all settlements paid to them or the injured or deceased person through whom they claim. The Legislature could have decided to view each member as a separate claimant, but it did not.

## VI

If sections 33.011 and 33.012 were properly construed, the Court would not need to erect presumptions regarding sham transactions or deal with a host of thorny issues that will spawn satellite litigation. There would be no need to wrestle with when and how a trial court determines if there has been a sham, whether the attorney/client privilege forecloses discovery from counsel, and what to do if questionable transactions occur after the trial court's plenary jurisdiction expires. Under my construction of Chapter 33, no controversy over sham transactions, which was of concern to the court of appeals in *McIver*,[69] could ever materialize, as has

---

**67.** The court of appeals' calculation was off by $.01 in this regard. It used $20,238.09 as the settlement credit, instead of $20,238.10.

**68.** The court of appeals again miscalculated, this time by $.10, in arriving at the judgment,

awarding $1,198,270.10 rather than $1,198,270.

**69.** *J.D. Abrams v. McIver*, 966 S.W.2d 87, 97 (Tex.App.-Houston [1st Dist.] 1998, pet. denied) (concluding that the Legislature intended family members to be considered part of

happened in this case. But since a majority of the Court is sending this case back to the trial court to determine whether there was a sham transaction, a few observations are in order.

The first is that the Court gives little guidance on what evidence, if any, would rebut the presumption that the Court erects. In this case, counsel for the Shorts has been eager to explain to other lawyers across the state that in many cases, there is a "black sheep" in the family, and that the settlement device used in this case was conceived to skirt section 33.012(b).[70] In teaching other lawyers how to duplicate what to me is a transparent avoidance of the statute, counsel for the Shorts said, "[w]e have cases where sometimes you have a plaintiff you are not particularly proud of. Maybe it's the dad. Maybe it's the mom. Maybe it's one of the kids, but there is somebody that you have got a problem with." [71] Counsel then detailed how the "black sheep" would accept the settlement offer and then dole out most of the proceeds to other family members in order to deprive the non-settling defendant of any settlement credit:

> So let's say you have a situation like we had where you have a black sheep of the family, and you have some people coming forward and they are going to offer you some money to settle the case [for $300,000].... I'm going to give $235,000 of that to the black sheep, and then I'm going to give $16,250 of that to each of the other plaintiffs, and then I'm going to non-suit the black sheep entirely from the case, including against the remaining

defendants, because if he got turned [sic] $35,000, that's going to wipe out any recovery he would get anyway because no jury is ever going to give this jerk $235,000 to begin with.

> Now, before you do that, you kind of sit them down and you tell them—this needs to be well documented with your plaintiffs. You say, look, we are going to give you all this money. You are going to pay all the attorneys' fees and costs out of it, and then you are going to turn around, if you will agree to do this, and you are going to give a gift to your momma of most of the money that you got.... And, then, guess what? The defendant gets no settlement credit.

*   *   *

> That's how we did it in Austin [in the *Utts v. Short* case]. It's held up. It works. It's valid. And if anybody needs the documents and how to document something like that, call us up. We'll send them to you.[72]

If, on remand, Dr. Utts offers evidence of the foregoing statements of counsel, and the Short plaintiffs and Dorothy Walker counter with testimony that the payments were simply gifts, is the trial court nevertheless entitled to conclude that the transactions were in fact gifts and not a sham? Under the presumption that the Court has crafted, the answer should be "no." The presumption is based on receiving a benefit. That presumption cannot be merely illusory and must be applied in a meaningful fashion.

---

"claimant" "in order to protect defendants from plaintiffs who would manipulate settlements among those 'seek(ing) recovery of damages for injury to another person' ").

70. *See* Michael W. Shore, Settlement Traps: Credits, Liens, and the Empty Chair at Trial, Lecture at the 9th Annual Medical Malpractice Conference of the Texas Trial Lawyers

Association (September 17–18, 1998) at 15–19 (transcript available from Preferred Records, Inc., Dallas, Texas).

71. *Id.* at 15.

72. *Id.* at 16–17, 19.

A second concern I have is that a non-settling defendant should be entitled to know whether the trial court is going to find the transaction a sham *before* that defendant is bound by the statutorily required election under section 33.012 between a dollar-for-dollar settlement credit under (b)(1) and the percentages under (b)(2). The Court says that the determination of whether a payment by one family member to another is a sham can be determined after the jury's verdict, which is reasonable and will be necessary in some cases. But, the Court does not also say that if the trial court concludes that the payment was not a sham, then the defendant must be able to change its election to the percentages set forth in 33.012(b)(2) if it chooses to do so. The Court's silence should not be taken for anything other than its unwillingness to address the issue. The Court's opinion should not be interpreted as depriving a non-settling defendant of a meaningful choice that has been given by the Legislature.

A third concern is that the subterfuge may occur after a final judgment is entered and the trial court has lost plenary power. The defendant is then faced with a difficult burden in obtaining the settlement credit to which the Legislature has said it is entitled. Under these circumstances, a defendant must be given an opportunity to obtain relief in a separate proceeding.

Another question that is not considered in the Court's opinion is whether the attorney/client privilege applies if a non-settling defendant seeks evidence from plaintiffs' counsel or the settling defendant's counsel. Obviously, the privilege should not apply. The attorneys for the plaintiffs in this case apparently acknowledged this by producing evidence of the instructions they received regarding how the settlement proceeds were to be distributed.

Finally, nothing in the Court's opinion forecloses Dr. Utts from determining on remand whether the non-settling Short family members or the estate paid the same percentage of their respective recoveries as attorney's fees and costs that Dorothy Walker Short did. She paid 75% for attorney's fees and costs when she settled before trial. If the other family members paid less than 75%, then they have received an additional benefit from the settlement with Dorothy Walker Short.

By failing to apply sections 33.011 and 33.012 as written, the Court has unnecessarily multiplied the issues to be litigated.

\*     \*     \*     \*     \*     \*

I respectfully dissent.

Appendix A

Assume that Dorothy Walker Short's claim had been submitted to the jury, that the jury had awarded her the same amount as her siblings, and that Dr. Utts were solely liable. The principal amount of the judgment would then be calculated as follows:

|  |  |
| --- | --- |
| Estate of Clifton Short | $100,000 |
| Norma Short | 300,000 |
| Dennie Short | 12,000 |
| Patricia Short Cain | 12,000 |
| Sam Short | 12,000 |
| Dorothy Walker Short | 12,000 |
| Total | $448,000 |
| Less settlements | ($200,050) |
| Judgment amount | $247,950 |

This judgment amount would then be allocated among the non-settling plaintiffs based the proportion each jury finding bears to the total amount found for the non-settling plaintiffs, here $436,000.00.

Percentage calculations:

| | | |
|---|---|---|
| Estate of Clifton Short | $100,000 / $436,000 = | 22.9358% |
| Norma Short | $300,000 / $436,000 = | 68.8073% |
| Dennie Short | $ 12,000 / $436,000 = | 2.7523% |
| Patricia Short Cain | $ 12,000 / $436,000 = | 2.7523% |
| Sam Short | $ 12,000 / $436,000 = | 2.7523% |
| | | 100.0000% |

Allocation of judgment among non-settling plaintiffs:

| | | |
|---|---|---|
| Estate of Clifton Short | 22.9358% of $247,950 = | $ 56,869.31 |
| Norma Short | 68.8073% of $247,950 = | 170,607.70 |
| Dennie Short | 2.7523% of $247,950 = | 6,824.33 |
| Patricia Short Cain | 2.7523% of $247,950 = | 6,824.33 |
| Sam Short | 2.7523% of $247,950 = | 6,824.33 |
| | | $247,950.00 |