Horatio Sprague **TAVEAU**, D.O., Appellant,

v.

Angela M. **BRENDEN**, Individually and as Representative of the Estate of Linda Gayle Evans, Deceased; Gayle S. Maxwell; and Holbert H. Kirkpatrick, Appellees.

No. 11–02–00195–CV.

Court of Appeals of Texas, Eastland.

Sept. 15, 2005.

Daena Goldsmith Ramsey, Dena B. Mastrogiovanni, Schell, Mitchel & Cooley, L.L.P., Dallas, for appellant.

Richard N. Countiss, Countiss Law Firm, Houston, Richard A. Dodd, Timothy R. Cappolino, Cappolino, Dodd & Krebs, Cameron, for appellees.

Panel consists of: WRIGHT, J., and McCALL, J.*

* W.G. Arnot, III, Chief Justice, retired effective July 31, 2005. The chief justice position is vacant.

Opinion

JIM R. WRIGHT, Justice.

This a medical malpractice suit in which Linda Gayle Evans and her mother, father, and daughter brought suit against Dr. Horatio Sprague Taveau and others [1] for injuries that Evans received as a result of the misplacement of a central, or subclavian, line. Instead of going into the superior vena cava, the line went into the brachial artery in Evans's right arm. After medicine was administered through that line, Evans's arm rotted and died. After many surgeries and attempts to save the arm, Evans's arm was amputated. Evans subsequently died from occlusive coronary atherosclerosis and probable norpropoxyphene toxicity. The plaintiffs alleged that Dr. Taveau's negligence was a proximate cause of Evans's death. The jury found that Dr. Taveau and Abilene Regional Medical Center were negligent, that 75 percent of the negligence was attributable to Dr. Taveau, and that 25 percent was attributable to the hospital. The jury awarded damages as follows: $150,000.00 for Evans's physical pain and mental anguish; $500,000.00 for medical expenses; $2,700.00 to Evans's daughter, Angela Brenden; $5,500.00 to Evans's mother, Gayle S. Maxwell; and $9,000.00 to Evans's father, Holbert H. Kirkpatrick. After allowing for a 25 percent deduction and a settlement credit, the trial court entered judgment on the jury's verdict, awarding the plaintiffs $257,000.00 plus prejudgment and postjudgment interest. We affirm in part and reverse and remand in part.

## Issues on Appeal

Dr. Taveau presents eight issues on appeal, and the plaintiffs present three cross-points. In the first issue, Dr. Taveau argues that the trial court erred in submit-

ting the jury question regarding Evans's damages. In the second issue, Dr. Taveau complains of error in the exclusion of evidence relating to Evans's medical history and drug abuse. In the third issue, Dr. Taveau contends that the trial court erred by ruling on an evidentiary matter after both sides had closed and by withholding that evidence from the jury during part of its deliberations. In the fourth issue, Dr. Taveau argues that the trial court erred in denying his motion for mistrial after Maxwell's improper contact with jurors. In the fifth issue, Dr. Taveau contends that the trial court erred in admitting cumulative, repetitive, and unqualified evidence regarding the standard of care. In the sixth issue, he contends that the trial court erred in denying his motion for mistrial after the plaintiffs, in violation of a motion in limine, introduced video testimony mentioning the peer review process and containing hearsay. Next, Dr. Taveau argues in his seventh issue that the trial court erred by permitting the plaintiffs to request a dollar amount for damages during the plaintiffs' closing argument even though they had not mentioned any dollar amount during their initial argument. Finally, in his last issue, Dr. Taveau complains of cumulative error related to the first seven issues.

In their cross-points, the plaintiffs contend that the trial court erred (1) in applying the settlement credit, (2) in deducting 25 percent—the amount of negligence attributable to the hospital—from the damage award, and (3) in calculating prejudgment interest.

## Evidentiary Issues

■ In the second, fifth, and sixth issues, Dr. Taveau complains of evidentiary matters. Based upon the reporter's rec-

1. The other defendants settled with the plain-   tiffs or were found not negligent by the jury.

ord in this case, we are unable to address the merits of these issues and to determine whether the errors, if any, are reversible error. The record contains 55 videotapes that contain excerpts of depositions and that were played in whole or in part for the jury. The videotapes are included in the record on appeal, but they were admitted by the trial court for record purposes only. The court reporter failed to transcribe the testimony as the videotapes were being played for the jury. The reporter's record does show that, during the playing of several videotapes, the tapes were stopped, the jury left the courtroom, the tapes were forwarded, the jury returned, and the tapes were resumed. Consequently, even if we were inclined to view the tapes or to follow along in the full written transcriptions of the depositions (which were also admitted for record purposes only), we would not be able to tell which portions of the videotapes were viewed by the jury.

TEX.R.APP.P. 13.1 provides that a court reporter "must" attend court sessions and make a full record of the proceedings unless excused by agreement of the parties. *See also* TEX. GOV'T CODE ANN. § 52.046 (Vernon 2005). The reporter's record on appeal should consist of the court reporter's transcription of the proceedings from trial. TEX.R.APP.P. 34.6(a)(1); *see also Rogers v. Rogers,* 561 S.W.2d 172 (Tex.1978); *State Farm Fire and Casualty Insurance Company v. Vandiver,* 941 S.W.2d 343, 346–47 (Tex.App.-Waco 1997, no writ); *The Home Insurance Company v. Hambric,* 906 S.W.2d 956, 959 (Tex.App.-Waco 1995, no writ), *overruled in part by State Farm Fire and Casualty Insurance Company v. Vandiver, supra.*

It is clear in this case, however, that the court reporter neither made a verbatim shorthand or stenographic record of nor transcribed the testimony that was intro-duced through the videotapes. It is also clear that the trial court, the parties, and their attorneys were aware that the court reporter was not making a stenographic record of that testimony. Before the first witness testified by videotape, the following occurred:

[DEFENSE ATTORNEY]: As we discussed yesterday, these [exhibits] are for the Court Reporter; correct?

THE COURT: Yes, correct. For that purpose they are admitted. And as we discussed, she will not take down the testimony in the video depositions.

[DEFENSE ATTORNEY]: Yes.

[PLAINTIFFS' ATTORNEY]: Yes.

The record does not show that either of the attorneys objected to the court reporter's failure to record the testimony. Thus, the lack of a complete reporter's record is not without the fault of Dr. Taveau. If an appellant exercises due diligence and through no fault of his own is unable to obtain a proper record of the evidence introduced, a new trial may be required. *Robinson v. Robinson,* 487 S.W.2d 713, 715 (Tex.1972). Because the lack of a proper reporter's record is not without the fault of Dr. Taveau, we hold that Dr. Taveau waived the second, fifth, and sixth issues.

### Jury Question

In his first issue, Dr. Taveau argues that the trial court erred in submitting a jury question which sought recovery of damages to compensate Evans and in entering a judgment awarding damages to Evans's estate. The complained-of question, Jury Question No. 7, reads: "What sum of money, if paid now in cash, would fairly and reasonably compensate Linda Gayle Evans, which resulted from the injury in question?" Dr. Taveau contends that the question was erroneous because Evans, deceased at the time of trial, was not a party plaintiff. Dr. Taveau also con-

tends that the estate should not have been awarded any damages because the jury question asked how much money "would" compensate "Evans" rather than asking how much money would compensate her "Estate" or how much money "would have" compensated Evans.

The jury question should have asked how much money *would have* compensated Evans. *Missouri Pacific Railroad Company v. Lemon,* 861 S.W.2d 501, 523 (Tex. App.-Houston [14th Dist.] 1993, writ dism'd by agr.)(citing 1 COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES PJC 9.02 (2d ed.1987)). Nevertheless, Dr. Taveau did not object to the jury charge on the grounds urged in his brief. He did, however, submit a proposed jury charge. Within that 17–page proposed charge was a question asking: "What sum of money, if paid now in cash, would fairly and reasonable compensate Angela Brenden as representative of the estate of Linda Gayle Evans, which resulted from the occurrence in question?" Dr. Taveau's proposed question was erroneous in that it inquired about compensating Brenden, as representative of the estate, for physical pain, mental anguish, and other compensable injuries. Because Dr. Taveau neither objected on the grounds asserted on appeal nor submitted a proper question that would have apprised the trial court of the error, we find that the error, if any, in Jury Question No. 7 was waived. *See* TEX.R.CIV.P. 274 & 278. Moreover, everyone at trial, including the jury, was well aware that Evans was dead at the time of trial and clearly could not be personally compensated for her injuries. However, her estate was a party at trial, and any damages that would have been due to Evans were properly awarded to her estate. Dr. Taveau's first issue is overruled.

*Belated Ruling on Evidentiary Matter*

■ In his third issue, Dr. Taveau complains of the timing of the trial court's ruling on a defense exhibit containing Evans's medical records. The record shows that, when the voluminous exhibit was originally offered, the plaintiffs objected that the medical records contained inadmissible references to Evans's drug use and other such inadmissible information. At that time, the trial court postponed ruling on the admissibility of the exhibit to give the plaintiffs time to tab the objectionable parts. These medical records were again discussed immediately prior to the close of the plaintiffs' case, and the attorneys agreed to admit them later. At the close of the evidence, the plaintiffs' attorney, who had tabbed approximately 100 pages containing objectionable matter, began going through his objections. After ruling on several of the objections and finding that the way in which the objections were being handled was "not working," the trial judge stated that he did not "want to stay the whole morning doing this." The trial court then took up the matter of objections to the jury charge. Afterward, Dr. Taveau's attorney stated that he had no problem with proceeding to jury arguments and pulling the tabbed pages out during a break. Later, after the pages had been pulled, the charge had been read to the jury, and the closing arguments had been made, the jury began deliberations at 3:10 in the afternoon. At that same time, the objections to the medical records resumed, with the trial court ruling on each one. After concluding these objections, Dr. Taveau's attorney made his bill of exceptions regarding the excluded records and objected to "the exclusion of this evidence after closing arguments and after the jury has been in deliberation now for about half an hour

[without] the benefit of the medical records as we were ruling on these."

■ Dr. Taveau did not timely object to the procedure employed by the trial court in allowing the jury to begin deliberations without the medical records. Dr. Taveau should have objected earlier—when the trial court could have postponed the beginning of the jury's deliberations. Consequently, we hold that Dr. Taveau did not preserve the issue for review. TEX. R.APP.P. 33.1(a). Moreover, we cannot find that the error, if any, in the withholding of the medical records for the first half hour of deliberations "probably caused the rendition of an improper judgment" when deliberations lasted until 8:00 p.m. that night, resumed at 8:30 a.m. the next morning, and concluded at 2:08 p.m. with a verdict. TEX.R.APP.P. 44.1(a)(standard for reversible error in civil cases); *see also First Employees Insurance Company v. Skinner,* 646 S.W.2d 170 (Tex.1983)(finding that error in withholding of certain exhibits was not reversible error). Dr. Taveau's third issue is overruled.

### Improper Contact with Jurors

■ In his fourth issue, Dr. Taveau contends that the trial court erred in denying a mistrial based upon plaintiff Maxwell's improper contact with jurors. During trial, Maxwell spoke to three of the jurors. The record shows that the trial court talked to two of these jurors in chambers about Maxwell's improper contact. Juror Jerry White told the judge that Maxwell "said this has been quite an ordeal. This has been going on about two years. And that's my daughter." Juror White just turned around and walked away. Juror White asserted that the contact with Maxwell would not have any effect on him whatsoever. The trial court also spoke with Juror Sharon Earnest. According to Juror Earnest, Maxwell spoke to her and Juror Sharon Lindsey as they were washing their hands in the rest room. Maxwell asked, "Is anyone else having a hard time staying awake?" Juror Earnest stated that neither she nor Juror Lindsey said a word. They just finished washing their hands and left. Juror Earnest stated that the conversation would not affect her deliberations in this case.

After the meeting in chambers, the trial court explained the situation to the parties, had the court reporter read aloud what had transpired in chambers, and instructed plaintiffs' counsel to "talk to [his] party in very strong language." Dr. Taveau then moved for a mistrial, which was denied.

When a motion for new trial is based upon an improper jury communication, the trial court "may grant a new trial if such...communication...be material, and if it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party." TEX.R.CIV.P. 327(a); *see also Strauss v. Continental Airlines, Inc.,* 67 S.W.3d 428, 447–48 (Tex. App.-Houston [14th Dist.] 2002, no pet'n). The comments in this case were not material, nor does it appear that they probably caused injury to Dr. Taveau. Asking whether anyone else was having a hard time staying awake or telling them things that they had already heard during the trial did not amount to material communications to the jurors. The record shows that, prior to the improper comments, the jury had already been informed that the plaintiffs and their attorneys had "lived with this case for three years." Also, Maxwell had already testified and referred to the situation as an "ordeal." We note that Maxwell apparently did not curry any favor by her comments; she received less money than Evans's father.

A trial court's denial of a motion for mistrial will not be disturbed without a showing that the court abused its discretion. *Primrose Operating Company, Inc. v. Jones,* 102 S.W.3d 188, 193 (Tex.App.-Amarillo 2003, pet'n den'd). We hold that, although the contact was improper, the trial court did not abuse its discretion in denying Dr. Taveau's motion for mistrial. The fourth issue is overruled.

### Damages and Jury Argument

In his seventh issue, Dr. Taveau contends that the trial court erred in allowing the plaintiffs to argue damages for the first time during their rebuttal argument and in failing to require the plaintiffs to fully close during their opening argument. During the opening argument, the plaintiffs' attorney addressed the dollar amount of the medical expenses that Evans incurred, but he addressed the damages for pain and suffering in a general way—telling the jury about Evans's indescribable agony, mutilation, and mental torment—without requesting a certain dollar amount. At the end of plaintiffs' opening argument, Dr. Taveau objected that the plaintiffs had failed to fully close because they had not "talked about money." The trial court overruled the objection. Counsel for Dr. Taveau went on to argue later that the jury should not "award a penny of damages." In closing, the plaintiffs' attorney argued to the jury that this case was "worth somewhere between 2 and 10 million dollars."

TEX.R.CIV.P. 269 governs jury arguments. Rule 269(a) provides that the party with the burden of proof is entitled to open and conclude the argument. Rule 269(b) provides that, in all arguments, "the counsel opening shall present his whole case as he relies on it, both of law and facts, and shall be heard in the concluding argument only in reply" to opposing coun-

sel. First, although Rule 269(b) provides that the party with the burden of proof shall fully open, there is no error in the failure to do so. *Costa v. Storm,* 682 S.W.2d 599, 605 (Tex.App.-Houston [1st Dist.] 1984, writ ref'd n.r.e.); *Continental Bus System, Inc. v. Toombs,* 325 S.W.2d 153, 163 (Tex.Civ.App.-Fort Worth 1959, writ ref'd n.r.e.). Error, in the form of an abuse of discretion, could arise if a party were allowed to address a matter in closing that was not presented in his opening argument or in opposing counsel's jury argument. *See Continental Bus System, Inc. v. Toombs, supra.* However, Dr. Taveau did not object when the plaintiffs requested millions of dollars in their closing argument. *See* Rule 33.1(a). We hold that the trial court did not abuse its discretion in overruling the objection to the plaintiffs' alleged failure to fully open and that any objection to the subsequent closing argument was waived by Dr. Taveau's failure to object. Second, regardless of whether the plaintiffs fully opened as to damages, their closing argument regarding damages was proper under Rule 269(b) as a reply to opposing counsel's closing argument. Dr. Taveau's seventh issue is overruled.

### Cumulative Error

In his final issue, Dr. Taveau complains that cumulative error based upon the matters addressed in his first seven issues requires a reversal of the trial court's judgment. We disagree. Dr. Taveau has not shown that the alleged errors probably caused the rendition of an improper judgment. *See* Rule 44.1(a). Dr. Taveau's eighth issue is overruled.

### Plaintiffs' Cross–Points

In their first cross-point, the plaintiffs complain of the trial court's application of the settlement credit. The

record shows that the plaintiffs had settled with the hospital for a total of $257,000.00. The parties stipulated that a settlement of $250,000.00 was divided into fourths, with each plaintiff receiving a one-fourth share of that amount, and that the estate received an extra $7,000.00. Based upon Dr. Taveau's election of a dollar-for-dollar credit, the trial court deducted the entire $257,000.00 from the jury's award. The plaintiffs contend that no more than $70,000.00 (the amount for which the estate settled) should have been deducted.

Relying on *Drilex Systems, Inc. v. Flores*, 1 S.W.3d 112 (Tex.1999), the trial court essentially treated the plaintiffs as one entity for purposes of applying the settlement credit. The plaintiffs rely on *Utts v. Short*, 81 S.W.3d 822 (Tex.2002), a health-care liability case involving a settlement-credit issue. In *Utts*, the court held that, "once the nonsettling defendant presents evidence of the nonsettling plaintiff's benefit from a settlement, the trial court shall presume the settlement credit applies unless the nonsettling plaintiff presents evidence to overcome this presumption." *Utts v. Short, supra* at 829. The claim in *Utts* was brought by an injured person's family members and estate against a hospital and its physicians. One family member settled with the hospital, divided her settlement with the other plaintiffs, and then dismissed with prejudice all of her claims against the hospital and Dr. Utts. Trial proceeded between the remaining plaintiffs and Dr. Utts. Thus, the settling person was no longer a plaintiff or a "claimant."[2] Because the settling person was no longer a claimant, the *Utts* court

did not apply *Drilex*. There were no nonsettling plaintiffs in the present case, nor was there a settling person who had dismissed all of her claims against the defendants. We find *Utts* to be distinguishable and *Drilex* to be controlling in this case.

In *Drilex*, the plaintiffs consisted of the injured person and his family members. One of the defendants settled with all of the plaintiffs prior to trial, distributing specific amounts to each plaintiff. The trial proceeded against Drilex. At trial, Drilex elected a dollar-for-dollar credit. *See* former TEX. CIV. PRAC. & REM. CODE § 33.012(b)(1) (1995)(allowing damages recovered by "the claimant" to be reduced by a credit equal to "the sum of the dollar amounts of all settlements"); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 33.012(c) (Vernon Supp.2004–2005). Construing former TEX. CIV. PRAC. & REM. CODE §§ 33.011(1) & 33.012 (1995)[3] as they existed at the time of *Drilex* and at the time of the trial in this case, the supreme court held that the plaintiffs must be viewed "as one claimant" and that "the total of all damages to be recovered by the family must be reduced by the total of all settlements received by the family." *Drilex Systems, Inc. v. Flores, supra* at 122.

We hold that the trial court did not err in this case by treating the plaintiffs as one entity for purposes of the settlement credit. Pursuant to *Drilex*, the plaintiffs must be treated "as one claimant." Thus, a credit for the entire amount of the plaintiffs' $257,000.00 settlement was appropriate. The first cross-point is overruled.

---

**2.** We note that, in 2003 after the *Utts* opinion, the legislature expanded the definition of "claimant" to include "any person who is seeking, has sought, or could seek recovery of damages." TEX. CIV. PRAC. & REM. CODE ANN. § 33.011(1)(B) (Vernon Supp.2004–2005).

**3.** We note that both of these sections were amended in 2003; however, the amendments apply only to actions filed on or after July 1, 2003.

In their second cross-point, the plaintiffs argue that $257.000.00 was the maximum amount that could be deducted from the jury award. We agree.

The record shows that, in addition to the amount of the settlement credit of $257,000.00, the trial court deducted another 25 percent based upon the fact that only 75 percent of the negligence that caused Evans's injury was attributable to Dr. Taveau. When the percentage of negligence attributable to a particular defendant is greater than 50 percent, he is jointly and severally liable for the entire amount of damages. TEX. CIV. PRAC. & REM. CODE ANN. § 33.013(b)(1) (Vernon Supp. 2004–2005), formerly TEX. CIV. PRAC. & REM. CODE § 33.013(b) (1995). Furthermore, in this case, Dr. Taveau chose a dollar-for-dollar credit rather than a percentage credit. *See* former Section 33.012(b)(1). We hold that the trial court erred in deducting 25 percent from the jury's award. The deductions should have been limited to the $257,000.00 settlement credit. *See Sugar Land Properties, Inc. v. Becnel,* 26 S.W.3d 113, 119–21 (Tex.App.-Houston [1st Dist.] 2000, no pet'n); *see also Roberts v. Williamson,* 111 S.W.3d 113 (Tex.2003). The plaintiffs' second cross-point is sustained.

In their third cross-point, the plaintiffs complain about the amount of prejudgment interest. The record shows that the trial court awarded prejudgment interest as follows: $94,139.22 through June 10, 2001, and $70.41 per diem thereafter. The judgment was signed on June 4, 2002. When the trial court entered the judgment in this case, it did not have the benefit of the recent supreme court opinion in *Battaglia v. Alexander,* No. 02–0701, 175 S.W.3d 893, 2005 WL 1252326 (Tex. May 27, 2005). In *Battaglia,* the court set out the parameters for calculating prejudgment interest under former TEX. REV.CIV.STAT. art. 4590i, § 16.02 (1997) when a settlement credit was involved. Although Article 4590i, section 16.02 was repealed in 2003, it was in effect at the time of the injury and the trial in this case. Pursuant to Article 4590i, section 16.02 and *Battaglia,* the prejudgment interest in this case began to accrue on the date of the injury.[4] The damages in this case should have been treated as a lump sum incurred on the date of the injury, and the "settlement payment should [have been] credited first to accrued prejudgment interest as of the date the settlement payment was made, then to 'principal.'" *Battaglia v. Alexander, supra* —— S.W.3d at ——, *12. We sustain the plaintiffs' third cross-point and remand the cause for reconsideration in light of *Battaglia.*

The judgment of the trial court is affirmed in part and reversed and remanded in part. The judgment is reversed only insofar as the amount of damages and prejudgment interest are concerned. The cause is remanded to the trial court for recalculation of damages and prejudgment interest in a manner consistent with this opinion.

---

4. Although we do not agree that the date of injury in this case was the date of death, the plaintiffs, by letter dated September 8, 2005, have agreed with Dr. Taveau that "the date of injury, for calculation of pre-judgment interest, should be the date of death ... November 17, 1999." Consequently, on remand, the trial court should use November 17, 1999, as the date of injury.