11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion


 

Horatio
Sprague Taveau, D.O.

Appellant

Vs.                   No.
11-02-00195-CV -- Appeal from Taylor County

Angela M. Brenden,
Individually and as Representative 

of the Estate of Linda
Gayle Evans, Deceased; Gayle S. 

Maxwell; and Holbert H.
Kirkpatrick

 

Appellees

 

This a medical malpractice suit in which Linda
Gayle Evans and her mother, father, and daughter brought suit against Dr.
Horatio Sprague Taveau and others[1]
for injuries that Evans received as a result of the misplacement of a central,
or subclavian, line.  Instead of
going into the superior vena cava, the line went into the brachial artery in Evans=s right arm.  After medicine was administered through
that line, Evans=s arm
rotted and died.  After many
surgeries and attempts to save the arm, Evans=s
arm was amputated.  Evans
subsequently died from occlusive coronary atherosclerosis and probable norpropoxyphene
toxicity.  The plaintiffs alleged
that Dr. Taveau=s
negligence was a proximate cause of Evans=s
death.  The jury found that Dr.
Taveau and Abilene Regional Medical Center were negligent, that 75 percent of
the negligence was attributable to Dr. Taveau, and that 25 percent was
attributable to the hospital.  The
jury awarded damages as follows: $150,000.00 for Evans=s
physical pain and mental anguish; $500,000.00 for medical expenses; $2,700.00
to Evans=s
daughter, Angela Brenden; $5,500.00 to Evans=s
mother, Gayle S. Maxwell; and $9,000.00 to Evans=s
father, Holbert H. Kirkpatrick. 
After allowing for a 25 percent deduction and a settlement credit, the
trial court entered judgment on the jury=s
verdict, awarding the plaintiffs $257,000.00 plus prejudgment and postjudgment
interest.  We affirm in part and
reverse and remand in part.  








                                                                 Issues
on Appeal

Dr. Taveau presents eight issues on appeal, and
the plaintiffs present three cross-points. 
In the first issue, Dr. Taveau argues that the trial court erred in
submitting the jury question regarding Evans=s
damages.  In the second issue, Dr.
Taveau complains of error in the exclusion of evidence relating to Evans=s medical history and drug abuse.  In the third issue, Dr. Taveau contends
that the trial court erred by ruling on an evidentiary matter after both sides
had closed and by withholding that evidence from the jury during part of its
deliberations.  In the fourth issue,
Dr. Taveau argues that the trial court erred in denying his motion for mistrial
after Maxwell=s
improper contact with jurors.  In
the fifth issue, Dr. Taveau contends that the trial court erred in admitting
cumulative, repetitive, and unqualified evidence regarding the standard of
care.  In the sixth issue, he contends
that the trial court erred in denying his motion for mistrial after the
plaintiffs, in violation of a motion in limine, introduced video testimony
mentioning the peer review process and containing hearsay.  Next, Dr. Taveau argues in his seventh
issue that the trial court erred by permitting the plaintiffs to request a
dollar amount for damages during the plaintiffs=
closing argument even though they had not mentioned any dollar amount during
their initial argument.  Finally, in
his last issue, Dr. Taveau complains of cumulative error related to the first
seven issues.  

In their cross-points, the plaintiffs contend that
the trial court erred (1) in applying the settlement credit, (2) in deducting
25 percent -- the amount of negligence attributable to the hospital -- from the
damage award, and (3) in calculating prejudgment interest.  

                                                                 Evidentiary
Issues








In the second, fifth, and sixth issues, Dr. Taveau
complains of evidentiary matters. 
Based upon the reporter=s
record in this case, we are unable to address the merits of these issues and to
determine whether the errors, if any, are reversible error.  The record contains 55 videotapes that
contain excerpts of depositions and that were played in whole or in part for
the jury.  The videotapes are
included in the record on appeal, but they were admitted by the trial court for
record purposes only.  The court
reporter failed to transcribe the testimony as the videotapes were being played
for the jury.  The reporter=s record does show that, during the
playing of several videotapes, the tapes were stopped, the jury left the
courtroom, the tapes were forwarded, the jury returned, and the tapes were
resumed.  Consequently, even if we
were inclined to view the tapes or to follow along in the full written
transcriptions of the depositions (which were also admitted for record purposes
only), we would not be able to tell which portions of the videotapes were
viewed by the jury.

TEX.R.APP.P. 13.1 provides that a court reporter Amust@
attend court sessions and make a full record of the proceedings unless excused
by agreement of the parties.  See
also TEX. GOV=T CODE
ANN. ' 52.046
(Vernon 2005).  The reporter=s record on appeal should consist of
the court reporter=s
transcription of the proceedings from trial.  TEX.R.APP.P. 34.6(a)(1); see also
Rogers v. Rogers, 561 S.W.2d 172 (Tex.1978); State Farm Fire and
Casualty Insurance Company v. Vandiver, 941 S.W.2d 343, 346-47 (Tex.App. -
Waco 1997, no writ); The Home Insurance Company v. Hambric, 906 S.W.2d
956, 959 (Tex.App. - Waco 1995, no writ), overruled in part by State Farm
Fire and Casualty Insurance Company v. Vandiver, supra. 

It is clear in this case, however, that the court
reporter neither made a verbatim shorthand or stenographic record of nor
transcribed the testimony that was introduced through the videotapes.  It is also clear that the trial court,
the parties, and their attorneys were aware that the court reporter was not
making a stenographic record of that testimony.  Before the first witness testified by
videotape, the following occurred: 

[DEFENSE ATTORNEY]:  As we discussed yesterday, these
[exhibits] are for the Court Reporter; correct? 

 

THE COURT: 
Yes, correct.  For that
purpose they are admitted.  And as
we discussed, she will not take down the testimony in the video depositions.

  

[DEFENSE ATTORNEY]:  Yes. 

 

[PLAINTIFFS=
ATTORNEY]:  Yes.

 

The record does not show that either of the attorneys objected to
the court reporter=s failure
to record the testimony.  Thus, the
lack of a complete reporter=s
record is not without the fault of Dr. Taveau.  If an appellant exercises due diligence
and through no fault of his own is unable to obtain a proper record of the
evidence introduced, a new trial may be required.  Robinson v. Robinson, 487 S.W.2d
713, 715 (Tex.1972).  Because the
lack of a proper reporter=s
record is not without the fault of Dr. Taveau, we hold that Dr. Taveau waived
the second, fifth, and sixth issues. 









                                                                    Jury
Question

In his first issue, Dr. Taveau argues that the
trial court erred in submitting a jury question which sought recovery of
damages to compensate Evans and in entering a judgment awarding damages to
Evans=s
estate.  The complained-of question,
Jury Question No. 7, reads:  AWhat sum of money, if paid now in cash,
would fairly and reasonably compensate Linda Gayle Evans, which resulted from
the injury in question?@  Dr. Taveau contends that the question
was erroneous because Evans, deceased at the time of trial, was not a party
plaintiff.  Dr. Taveau also contends
that the estate should not have been awarded any damages because the jury
question asked how much money Awould@ compensate AEvans@ rather than asking how much money
would compensate her AEstate@ or how much money Awould have@
compensated Evans.  

The jury question should have asked how much money
would have compensated Evans. 
Missouri Pacific Railroad Company v. Lemon, 861 S.W.2d 501, 523
(Tex.App. - Houston [14th Dist.] 1993, writ dism=d
by agr.)(citing 1 COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS
PATTERN JURY CHARGES PJC 9.02 (2d ed. 1987)).  Nevertheless, Dr. Taveau did not object
to the jury charge on the grounds urged in his brief.  He did, however, submit a proposed jury
charge.  Within that 17-page proposed
charge was a question asking: AWhat
sum of money, if paid now in cash, would fairly and reasonable compensate
Angela Brenden as representative of the estate of Linda Gayle Evans, which
resulted from the occurrence in question?@  Dr. Taveau=s
proposed question was erroneous in that it inquired about compensating Brenden,
as representative of the estate, for physical pain, mental anguish, and other
compensable injuries.  Because Dr.
Taveau neither objected on the grounds asserted on appeal nor submitted a proper
question that would have apprised the trial court of the error, we find that
the error, if any, in Jury Question No. 7 was waived.  See TEX.R.CIV.P. 274 &
278.  Moreover, everyone at trial,
including the jury, was well aware that Evans was dead at the time of trial and
clearly could not be personally compensated for her injuries.  However, her estate was a party at
trial, and any damages that would have been due to Evans were properly awarded
to her estate.  Dr. Taveau=s first issue is overruled.  








                                                  Belated
Ruling on Evidentiary Matter

In his third issue, Dr. Taveau complains of the
timing of the trial court=s
ruling on a defense exhibit containing Evans=s
medical records.  The record shows
that, when the voluminous exhibit was originally offered, the plaintiffs
objected that the medical records contained inadmissible references to Evans=s drug use and other such inadmissible
information.  At that time, the
trial court postponed ruling on the admissibility of the exhibit to give the plaintiffs
time to tab the objectionable parts. 
These medical records were again discussed immediately prior to the
close of the plaintiffs=
case, and the attorneys agreed to admit them later.  At the close of the evidence, the
plaintiffs=
attorney, who had tabbed approximately 100 pages containing objectionable
matter, began going through his objections.  After ruling on several of the
objections and finding that the way in which the objections were being handled
was Anot
working,@ the
trial judge stated that he did not Awant
to stay the whole morning doing this.@  The trial court then took up the matter
of objections to the jury charge. 
Afterward, Dr. Taveau=s
attorney stated that he had no problem with proceeding to jury arguments and
pulling the tabbed pages out during a break.  Later, after the pages had been pulled,
the charge had been read to the jury, and the closing arguments had been made,
the jury began deliberations at 3:10 in the afternoon.  At that same time, the objections to the
medical records resumed, with the trial court ruling on each one.  After concluding these objections, Dr.
Taveau=s
attorney made his bill of exceptions regarding the excluded records and
objected to Athe
exclusion of this evidence after closing arguments and after the jury has been
in deliberation now for about half an hour [without] the benefit of the medical
records as we were ruling on these.@  








Dr. Taveau did not timely object to the procedure employed
by the trial court in allowing the jury to begin deliberations without the
medical records.  Dr. Taveau should
have objected earlier -- when the trial court could have postponed the
beginning of the jury=s
deliberations.  Consequently, we
hold that Dr. Taveau did not preserve the issue for review.  TEX.R.APP.P. 33.1(a).  Moreover, we cannot find that the error,
if any, in the withholding of the medical records for the first half hour of
deliberations Aprobably
caused the rendition of an improper judgment@
when deliberations lasted until 8:00 p.m. that night, resumed at 8:30 a.m. the
next morning, and concluded at 2:08 p.m. with a verdict.  TEX.R.APP.P. 44.1(a)(standard for
reversible error in civil cases); see also First Employees Insurance Company
v. Skinner, 646 S.W.2d 170 (Tex.1983)(finding that error in withholding of
certain exhibits was not reversible error).  Dr. Taveau=s
third issue is overruled.  

                                                        Improper
Contact with Jurors

In his fourth issue, Dr. Taveau contends that the
trial court erred in denying a mistrial based upon plaintiff Maxwell=s improper contact with jurors.  During trial, Maxwell spoke to three of
the jurors.  The record shows that
the trial court talked to two of these jurors in chambers about Maxwell=s improper contact.  Juror Jerry White told the judge that
Maxwell Asaid this
has been quite an ordeal.  This has
been going on about two years.  And
that=s my
daughter.@  Juror White just turned around and
walked away.  Juror White asserted
that the contact with Maxwell would not have any effect on him whatsoever.  The trial court also spoke with Juror
Sharon Earnest.  According to Juror
Earnest, Maxwell spoke to her and Juror Sharon Lindsey as they were washing
their hands in the rest room. 
Maxwell asked, AIs
anyone else having a hard time staying awake?@  Juror Earnest stated that neither she
nor Juror Lindsey said a word.  They
just finished washing their hands and left.  Juror Earnest stated that the
conversation would not affect her deliberations in this case.  

After the meeting in chambers, the trial court
explained the situation to the parties, had the court reporter read aloud what
had transpired in chambers, and instructed plaintiffs=
counsel to Atalk to
[his] party in very strong language.@  Dr. Taveau then moved for a mistrial,
which was denied.  








When a motion for new trial is based upon an
improper jury communication, the trial court Amay
grant a new trial if such...communication...be material, and if it reasonably
appears from the evidence both on the hearing of the motion and the trial of
the case and from the record as a whole that injury probably resulted to the
complaining party.@  TEX.R.CIV.P. 327(a); see also Strauss
v. Continental Airlines, Inc., 67 S.W.3d 428, 447-48 (Tex.App. - Houston
[14th Dist.] 2002, no pet=n).  The comments in this case were not
material, nor does it appear that they probably caused injury to Dr.
Taveau.  Asking whether anyone else
was having a hard time staying awake or telling them things that they had already
heard during the trial did not amount to material communications to the
jurors.  The record shows that,
prior to the improper comments, the jury had already been informed that the
plaintiffs and their attorneys had Alived
with this case for three years.@  Also, Maxwell had already testified and
referred to the situation as an Aordeal.@ 
We note that Maxwell apparently did not curry any favor by her comments;
she received less money than Evans=s
father.  

A trial court=s
denial of a motion for mistrial will not be disturbed without a showing that
the court abused its discretion.  Primrose
Operating Company, Inc. v. Jones, 102 S.W.3d 188, 193 (Tex.App. ‑
Amarillo 2003, pet=n den=d).  We hold that, although the contact was
improper, the trial court did not abuse its discretion in denying Dr. Taveau=s motion for mistrial.  The fourth issue is overruled. 

                                                        Damages
and Jury Argument 

In his seventh issue, Dr. Taveau contends that the
trial court erred in allowing the plaintiffs to argue damages for the first
time during their rebuttal argument and in failing to require the plaintiffs to
fully close during their opening argument. 
During the opening argument, the plaintiffs=
attorney addressed the dollar amount of the medical expenses that Evans
incurred, but he addressed the damages for pain and suffering in a general way
-- telling the jury about Evans=s
indescribable agony, mutilation, and mental torment -- without requesting a
certain dollar amount.  At the end
of plaintiffs= opening
argument, Dr. Taveau objected that the plaintiffs had failed to fully close
because they had not Atalked
about money.@  The trial court overruled the objection.
Counsel for Dr. Taveau went on to argue later that the jury should not Aaward a penny of damages.@ 
In closing, the plaintiffs=
attorney argued to the jury that this case was Aworth
somewhere between 2 and 10 million dollars.@









TEX.R.CIV.P. 269 governs jury arguments.  Rule 269(a) provides that the party with
the burden of proof is entitled to open and conclude the argument.  Rule 269(b) provides that, in all
arguments, Athe
counsel opening shall present his whole case as he relies on it, both of law
and facts, and shall be heard in the concluding argument only in reply@ to opposing counsel.  First, although Rule 269(b) provides
that the party with the burden of proof shall fully open, there is no error in
the failure to do so.  Costa v.
Storm, 682 S.W.2d 599, 605 (Tex.App. - Houston [1st Dist.] 1984, writ ref=d n.r.e.); Continental Bus System,
Inc. v. Toombs, 325 S.W.2d 153, 163 (Tex.Civ.App. - Fort Worth 1959, writ
ref=d n.r.e.).  Error, in the form of an abuse of
discretion, could arise if a party were allowed to address a matter in closing
that was not presented in his opening argument or in opposing counsel=s jury argument.  See Continental Bus System, Inc. v.
Toombs, supra.  However, Dr.
Taveau did not object when the plaintiffs requested millions of dollars in
their closing argument.  See
Rule 33.1(a).  We hold that the
trial court did not abuse its discretion in overruling the objection to the
plaintiffs= alleged
failure to fully open and that any objection to the subsequent closing argument
was waived by Dr. Taveau=s
failure to object.  Second,
regardless of whether the plaintiffs fully opened as to damages, their closing
argument regarding damages was proper under Rule 269(b) as a reply  to opposing counsel=s closing argument.  Dr. Taveau=s
seventh issue is overruled.  

                                                                 Cumulative
Error

In his final issue, Dr. Taveau complains that
cumulative error based upon the matters addressed in his first seven issues
requires a reversal of the trial court=s
judgment.  We disagree.  Dr. Taveau has not shown that the
alleged errors probably caused the rendition of an improper judgment.  See Rule 44.1(a).  Dr. Taveau=s
eighth issue is overruled.  

                                                             Plaintiffs= Cross-Points

In their first cross-point, the plaintiffs
complain of the trial court=s
application of the settlement credit. 
The record shows that the plaintiffs had settled with the hospital for a
total of $257,000.00.  The parties
stipulated that a settlement of $250,000.00 was divided into fourths, with each
plaintiff receiving a one-fourth share of that amount, and that the estate
received an extra $7,000.00.  Based
upon Dr. Taveau=s
election of a dollar-for-dollar credit, the trial court deducted the entire
$257,000.00 from the jury=s
award.  The plaintiffs contend that
no more than $70,000.00 (the amount for which the estate settled) should have
been deducted.  








Relying on Drilex Systems, Inc. v. Flores,
1 S.W.3d 112 (Tex.1999), the trial court essentially treated the plaintiffs as
one entity for purposes of applying the settlement credit.  The plaintiffs rely on Utts v. Short,
81 S.W.3d 822 (Tex.2002), a health-care liability case involving a
settlement-credit issue.  In Utts,
the court held that, Aonce
the nonsettling defendant presents evidence of the nonsettling plaintiff=s benefit from a settlement, the trial
court shall presume the settlement credit applies unless the nonsettling plaintiff
presents evidence to overcome this presumption.@  Utts v. Short, supra at 829.  The claim in Utts was brought by
an injured person=s family
members and estate against a hospital and its physicians.  One family member settled with the
hospital, divided her settlement with the other plaintiffs, and then dismissed
with prejudice all of her claims against the hospital and Dr. Utts.  Trial proceeded between the remaining
plaintiffs and Dr. Utts.  Thus, the
settling person was no longer a plaintiff or a Aclaimant.@[2]  Because the settling person was no
longer a claimant, the Utts court did not apply Drilex.  There were no nonsettling plaintiffs in
the present case, nor was there a settling person who had dismissed all of her
claims against the defendants.  We
find Utts to be distinguishable and Drilex to be controlling in
this case.  

In Drilex, the plaintiffs consisted of the
injured person and his family members. 
One of the defendants settled with all of the plaintiffs prior to trial,
distributing specific amounts to each plaintiff.  The trial proceeded against Drilex.  At trial, Drilex elected a
dollar-for-dollar credit.  See
former TEX. CIV. PRAC. & REM. CODE '
33.012(b)(1) (1995)(allowing damages recovered by Athe
claimant@ to be
reduced by a credit equal to Athe
sum of the dollar amounts of all settlements@);
see also TEX. CIV. PRAC. & REM. CODE ANN. '
33.012(c) (Vernon Supp. 2004 - 2005). 
Construing former TEX. CIV. PRAC. & REM. CODE '' 33.011(1) & 33.012 (1995)[3]
as they existed at the time of Drilex and at the time of the trial in
this case, the supreme court held that the plaintiffs must be viewed Aas one claimant@
and that Athe total
of all damages to be recovered by the family must be reduced by the total of
all settlements received by the family.@  Drilex Systems, Inc. v. Flores, supra
at 122.  

We hold that the trial court did not err in this
case by treating the plaintiffs as one entity for purposes of the settlement
credit.  Pursuant to Drilex,
the plaintiffs must be treated Aas
one claimant.@  Thus, a credit for the entire amount of
the plaintiffs=
$257,000.00 settlement was appropriate. 
The first cross-point is overruled. 


In their second cross-point, the plaintiffs argue
that $257.000.00 was the maximum amount that could be deducted from the jury
award.  We agree. 








The record shows that, in addition to the amount
of the settlement credit of $257,000.00, the trial court deducted another 25
percent based upon the fact that only 75 percent of the negligence that caused
Evans=s injury
was attributable to Dr. Taveau. 
When the percentage of negligence attributable to a particular defendant
is greater than 50 percent, he is jointly and severally liable for the entire
amount of damages.  TEX. CIV. PRAC.
& REM. CODE ANN. '
33.013(b)(1) (Vernon Supp. 2004 - 2005), formerly TEX. CIV. PRAC. & REM.
CODE '
33.013(b) (1995).  Furthermore, in
this case, Dr. Taveau chose a dollar-for-dollar credit rather than a percentage
credit.  See former Section
33.012(b)(1).  We hold that the
trial court erred in deducting 25 percent from the jury=s
award.  The deductions should have
been limited to the $257,000.00 settlement credit.  See Sugar Land Properties, Inc. v.
Becnel, 26 S.W.3d 113, 119-21 (Tex.App. - Houston [1st Dist.] 2000, no pet=n); see also Roberts v. Williamson,
111 S.W.3d 113 (Tex.2003).  The
plaintiffs= second
cross-point is sustained.

In their third cross-point, the plaintiffs
complain about the amount of prejudgment interest.  The record shows that the trial court
awarded prejudgment interest as follows: 
$94,139.22 through June 10, 2001, and $70.41 per diem thereafter.  The judgment was signed on June 4,
2002.  When the trial court entered
the judgment in this case, it did not have the benefit of the recent supreme
court opinion in Battaglia v. Alexander, No. 02-0701, 2005 WL 1252326
(Tex. May 27, 2005).  In Battaglia,
the court set out the parameters for calculating prejudgment interest under
former TEX.REV.CIV.STAT. art. 4590i, '
16.02 (1997) when a settlement credit was involved.  Although Article 4590i, section 16.02
was repealed in 2003, it was in effect at the time of the injury and the trial
in this case.  Pursuant to Article
4590i, section 16.02 and Battaglia, the prejudgment interest in this
case began to accrue on the date of the injury.[4]  The damages in this case should have
been treated as a lump sum incurred on the date of the injury, and the Asettlement payment should [have been]
credited first to accrued prejudgment interest as of the date the settlement
payment was made, then to >principal.=@  Battaglia v. Alexander, supra at
*12.  We sustain the plaintiffs= third cross-point and remand the cause
for reconsideration in light of Battaglia. 








The judgment of the trial court is affirmed in part
and reversed and remanded in part. 
The judgment is reversed only insofar as the amount of damages and
prejudgment interest are concerned. 
The cause is remanded to the trial court for recalculation of damages
and prejudgment interest in a manner consistent with this opinion.

 

JIM R. WRIGHT

JUSTICE 

 

September 15, 2005

Panel
consists of:  Wright, J., and
McCall, J.[5]











[1]The other defendants settled with the plaintiffs or
were found not negligent by the jury. 





[2]We note that, in 2003 after the Utts opinion,
the legislature expanded the definition of Aclaimant@ to include Aany
person who is seeking, has sought, or could seek recovery of damages.@  TEX. CIV.
PRAC. & REM. CODE ANN. ' 33.011(1)(B) (Vernon Supp. 2004 - 2005).





[3]We note that both of these sections were amended in
2003; however, the amendments apply only to actions filed on or after July 1,
2003.  





[4]Although we do not agree that the date of injury in
this case was the date of death, the plaintiffs, by letter dated September 8,
2005, have agreed with Dr. Taveau that Athe date
of injury, for calculation of pre-judgment interest, should be the date of
death...November 17, 1999.@ 
Consequently, on remand, the trial court should use November 17, 1999,
as the date of injury.





[5]W. G. Arnot, III, Chief Justice, retired effective July
31, 2005.  The chief justice
position is vacant.